THE STATE, EX REL. HUMPHREY, APPELLEE, *v.* ADKINS ET AL.,
APPELLANTS.

[Cite as State, ex rel. Humphrey, v. Adkins, 18
Ohio App. 2d 101.]

(No. 3243—Decided March 13, 1969.)

*Mr. Raymond A. White,* for appellee.

*Mr. Lee C. Falke,* prosecuting attorney, and *Miss Lillian M. Kern,* for appellants.

CRAWFORD, J. Respondents, appellants herein, superintendent and members of the Board of Education of the New Lebanon-Dixie High School, have appealed on questions of law from a mandatory injunction of the Court of Common Pleas issued on August 28, 1967, ordering them to furnish relator, a senior high school student, who was

expelled, with textbooks and a reasonable opportunity to take his second semester examinations and receive his diploma.

This action in mandamus was begun on June 1, 1967. Relator's petition alleges that on May 16, 1967, he was a second-semester senior student in good standing, needing three-quarters-of-an-hour credit to graduate on June 7, 1967; that on May 16, 1967, an episode occurred between him and one Dave Griffith, a teacher and coach; that on May 17, 1967, respondent Adkins, school superintendent, notified relator's parents that he had been expelled; that in the evening of May 17, the other five respondents, members of the board of education, confirmed his expulsion; that such absolute expulsion is in violation of Section 3313.-66, Revised Code, exceeds the authority of the school system, and is arbitrary and unreasonable; and that he is without adequate remedy at law.

The prayer of the petition is that the court order relator reinstated and that he be allowed to take the examinations, receive the needed credit, and be permitted to graduate and receive a diploma.

Upon the filing of this petition, the court forthwith issued a peremptory writ of mandamus granting the prayer.

On June 22, 1967, the court vacated the writ, to provide an opportunity for the respondents to be heard, and set the hearing at 9 a. m. on that date.

At that hearing respondents orally moved to dismiss the action in mandamus and, subsequently, on June 28, 1967, filed the same motion in writing. This motion, like certain motions for judgment made by relator during the hearing, was never expressly ruled upon, but was impliedly disposed of in the final judgment. No answer was ever filed by the respondents.

At the outset of the hearing on June 22, 1967, the court announced that it was treating the action, not as one in mandamus, but as one for a mandatory injunction. Clearly, mandamus would not lie. The respondents had not failed to perform any duty which could be ordered performed by a writ of mandamus. Rather, the relator complains

of the manner in which responents performed their duties. So, although the court acted, *sua sponte*, without the request of relator or the consent of respondents, in designating the action as one for mandatory injunction rather than mandamus, it thereby recognized the realities of the case, and neither side has pressed an objection to this procedure.

Whatever the form of the action, it is well settled that the court may not substitute its views for those of the school officials and may not interfere with their exercise of the discretion reposed in them, except in a suit for injunction where their action is found to be an abuse of discretion, or arbitrary, unreasonable or capricious. *State, ex rel. Masters, v. Beamer* (1923), 109 Ohio St. 133; *Board of Education v. State, ex rel. Wickham* (1909), 80 Ohio St. 133; *State, ex rel. Milhoof, v. Board of Education* (1907), 76 Ohio St. 297; *Board of Education v. Minor* (1872), 23 Ohio St. 211; *State, ex rel. Idle, v. Chamberlain* (Common Pleas, 1961), 175 N. E. 2d 539. See, also, the language in *Brown v. Board of Edn.* (1899), 6 N. P. 411, 8 O. D. (N. P.) 378; and 48 Ohio Jurisprudence 2d Part 2, 62-64, Schools, Section 179.

The findings of the court are contained in the first two paragraphs of the final entry which read as follows:

"This cause came on to be heard upon the plaintiffs' petition, the defendants' answer [*sic*] and the evidence. And upon due consideration thereof, the court finds for the plaintiffs and against the defendants.

"The court further finds that although the act of the defendant superintendent of schools in expelling Steve Humphrey on May 17, 1967, although questionable, being so near the end of his senior year, was not unreasonable or an abuse of discretion standing by itself, but we do find that the invalid procedure followed in the appeal hearing before the board of education, coupled with the failure or refusal on and after June 7, 1967 of the principal and the person or persons in charge of the course textbooks after demand made, to supply Steve Humphrey with textbooks to study for examinations in the courses in which he had enrolled, and to give him such examinations, was arbitrary and unreasonably punitive, and amounted in effect

to a denial of Steve Humphrey's right to complete his work after June 7, 1967, the end of the semester, and to qualify, if he received passing grades, for a diploma without being required to return to school for a full year to acquire three-fourths of one credit."

The controlling statute is Section 3313.66, Revised Code, which reads as follows:

"The superintendent of schools of a city or exempted village, the executive head of a local school district, or the principal of a public school may suspend a pupil from school for not more than ten days. Such superintendent or executive head may expel a pupil from school. Such superintendent, executive head, or principal shall within twenty-four hours after the time of expulsion or suspension, notify the parent or guardian of the child, and the clerk of the board of education in writing of such expulsion or suspension including the reasons therefor. The pupil or the parent, or guardan, or custodian of a pupil so expelled may appeal such action to the board of education at any meeting of the board and shall be permitted to be heard against the expulsion. At the request of the pupil, or his parent, guardian, custodian, or attorney, the board may hold the hearing in executive session but may act upon the expulsion only at a public meeting. The board may, by a majority vote of its full membership, reinstate such pupil. No pupil shall be suspended or expelled from any school beyond the current semester."

The respective authority and duties of the superintendent and of the board are thus clearly defined. The superintendent may expel a pupil, and the board must, if requested, permit the pupil or parent, etc., to be heard, and may, if it sees fit, reinstate him. The only rights of the expelled pupil are those to an appeal to and hearing by the board, and, if the board upholds the expulsion, to re-enter school after the current semester. He is not entitled to any other privileges or opportunities unless they are extended by grace of the school authorities. The statute provides none, and the court is without authority to grant or impose them.

The court, upon the evidence, properly recognized the

validity of the superintendent's order of expulsion. If, as the court suggests, and relator contends, the board followed an invalid procedure in considering whether to readmit the pupil, the fact is that they did not readmit him; hence, he remains expelled. It follows that the court had no power to grant relator's prayer for special privileges.

Relator argues that the board did not, as the statute requires, "act upon the expulsion only at a public meeting." This argument is self-defeating. If the board did not take valid action to reinstate him, he is still expelled.

The evidence shows that relator and his parents did not request a hearing in executive session and were, therefore, given a public hearing; that the board then went into executive session or caucus during which there was discussion and expression of opinion, but no vote and no formal action; that, thereafter, the meeting of the board was again called to order publicly, when relator and his parents were given further opportunity to be heard and to cross-examine Griffith; that the president of the board then announced in the public meeting that in view of the facts, which he then reviewed, including a long-continuing problem of relator's misbehavior, the board "had to go along with the decision of the administration"; and that no vote was taken in the public meeting.

Neither Section 3313.66, Revised Code, nor the more general Section 121.22, Revised Code, also cited, prohibits the board from holding an executive session. Both sections recognize that such sessions may be held, but no action may be taken therein.

In fact, Section 3313.66, Revised Code, provides for the hearing of the pupil, etc., at an executive session if so requested by him or on his behalf. (There was no such request here.) Beyond that, it provides that the board may act upon the expulsion only at a public meeting and that the pupil may be reinstated only by a majority vote.

The board must afford him a hearing, but may exercise their discretion as to whether they will reinstate him. If they vote on the question, that is an "act," which must be done publicly. Hence, unless there is a public vote to reinstate, the expulsion by the superintendent stands.

One circumstance criticized by the relator deserves comment. Griffith, the teacher-coach, and Adkins, the superintendent, were present with the board at its executive session, while relator was not. Although this procedure is not forbidden, relator's criticism of it is reasonable and understandable.

It should be noted that the evidence indicates a continuing behavior problem with relator in connection with others than Griffith. This fact was mentioned along with the episode of May 16, in the superintendent's notice of expulsion and the reasons therefor, given relator's parents on May 17, 1967.

All the circumstances in the case, as reflected in the evidence, compel the conclusion that neither the superintendent nor the board abused their discretion, or acted unreasonably, arbitrarily or capriciously.

Wholly aside from the legal aspects of the case, one is saddened by the fact that this young man must suffer severely for his indiscretions. However, in the long run it is not always the kindest course to shield the young from the consequences of their own misconduct.

It has been argued that the relator, if he has actually suffered a wrong, is nevertheless not entitled to relief by either mandamus or injunction because he has adequate remedies at law, either by way of an action for damages (*Roe* v. *Deming* [1871], 21 Ohio St. 666) or by administrative appeal. The availability of such an appeal is challenged. In the view we take of the case, it is unnecessary to decide that question.

We accept and affirm the finding of the trial court that the expulsion itself was lawful; but we find the court was without authority to attach conditions to the expulsion, and that portion of the order will be reversed.

Coming then to render the judgment which the Court of Common Pleas should have rendered, we shall enter judgment for respondents at relator's costs.

*Judgment accordingly.*

KERNS, P. J., and SHERER, J., concur.