COMMONS et al., Appellants,

v.

WESTLAKE CITY SCHOOLS BOARD OF EDUCATION, Appellee.

[Cite as *Commons v. Westlake City Schools Bd. of Edn.* (1996), 109 Ohio App.3d 706.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 68843.

Decided March 11, 1996.

*Spalding & Ujczo Co., L.P.A., Joseph E. Ujczo* and *Walter T. Spalding, Jr.,* for appellants.

*Means, Bichimer, Burkholder & Baker Co., L.P.A., John C. Burkholder* and *Scott C. Peters,* for appellee.

---

HARPER, Judge.

Plaintiff-appellant, Michael Commons, a minor, by and through his father and natural guardian, Carl Commons, appeals from the entry of summary judgment in favor of defendant-appellee, the Westlake City Schools Board of Education ("the board"), by the Court of Common Pleas of Cuyahoga County. Appellant submits that genuine issues of material fact remain for litigation regarding his declaratory judgment action in which he sought recognition of academic credit earned during a period of expulsion. A careful review of the record compels affirmance.

Appellant, when a freshman at Westlake High School, brought a handgun to school in violation of Section II of the Code of Student Conduct. The violation resulted in appellant's eighty-day expulsion from school, commencing on January 19, 1993 and terminating on May 20, 1993. As part of the expulsion process, appellant's family received a written "NOTICE OF EXPULSION FROM SCHOOL," along with a "NOTICE OF RIGHTS RE: EXPULSION FROM SCHOOL" and a "NOTICE OF ASSISTANCE PROGRAMS RE: EXPULSION FROM SCHOOL." The latter notice provided, in part, the name, address and telephone number of the individual who acted as the home-school contact for the school district. The notice advised that "[w]hile credit cannot be given during expulsion, assistance is available."

Appellant's parents, in a letter dated March 1, 1993, informed Beverly B. Reep, Superintendent of the school district, that they had enrolled appellant in the Academy of Home Education ("the Academy"). The Commonses related that appellant would not return to the high school for the 1992–1993 academic year following the end of his expulsion period, but would complete his ninth grade education in this home schooling program.

The Commonses sent a second letter to Reep in late April 1993, stating that appellant would return to Westlake High School for the 1993–1994 school year. The correspondence to Reep stated, "Please let us know if you plan to make any special assessment of his readiness to enter the tenth grade."

Reep responded to the Commonses' request in a few days. She informed them that their April 1993 letter had been forwarded to Dr. Christina Dinklocker, the Assistant Superintendent for Curriculum and Instruction. According to Reep's

letter, Dinklocker would review the Academy's accreditation and contact the Commonses regarding appellant's readiness to rejoin his classmates at the high school for his sophomore year.

The Commonses forwarded another letter to Reep on June 13, 1993. They repeated an earlier request that appellant's textbooks be reviewed in order to determine whether appellant received a "quality education" through the Academy.

David Minich, Principal of Westlake High School, informed the Commonses via a June 16, 1993 letter that pursuant to the school district's policy, credit would not be granted to appellant for his Academy school education. Minich, in part, referred to the notice relating to assistance programs wherein it was specifically stated that credit was not to be given for education received during expulsion.

After receipt of Minich's letter, the Commonses sought Reep's support and assistance in a letter to her on June 21, 1993. The letter contained references to appellant's "withdrawal" from school, and Ohio Adm.Code Chapter 3301–34, the Rules for Excuses from Compulsory Education adopted by the State Board of Education. The Commonses suggested to Reep that the rules required appellant's placement at the school upon his return to be based on an assessment of his educational progress, including his schooling with the Academy.

Reep responded to the Commonses' latest letter in a letter dated June 29, 1993. She initially set forth five points which related to the parents' concerns. First, Reep stated that the expulsion forms clearly advised that appellant could not receive credit during his eighty-day expulsion. Second, she explained that the notice of assistance programs was required by the Ohio Revised Code. Reep noted that even though Dr. Dinklocker's name was listed as the district's home schooling adviser, the Commonses failed to contact Dinklocker regarding appellant's home education. Third, Reep emphasized that the letter forwarded to her by the Commonses on March 1, 1993 qualified neither as a formal withdrawal notification nor a formal notification of home schooling. Fourth, the Commonses were advised that appellant could not earn home schooling credit for the period of expulsion. Finally, Reep outlined the assessment options available under Ohio Adm.Code 3301–34–04. Reep then advised the Commonses that a review of appellant's textbooks was not an assessment option available under the rule. In conclusion, and with the foregoing points in mind, Reep concluded:

"[I] will not allow earned credit for the 80 day period he was expelled. Technically, the home schooling procedure was not properly followed by you. However, we will be happy to evaluate Michael's educational progress through the assessment options listed by 3301–34–04 for the days he was not expelled but *not* in attendance at Westlake High School." (Emphasis *sic.*)

Reep affirmed her conclusion that appellant would not receive credit for his home schooling education during the period of expulsion in an August 9, 1993 letter.

Appellant filed his complaint for declaratory judgment in the trial court on June 23, 1994. Appellant alleged that the board had violated his right to due process by refusing to recognize the credits earned through the home schooling program while expelled from Westlake High School. Appellant thus requested the trial court to declare the rights, duties and responsibilities of the parties pursuant to R.C. Chapter 2721.

Both parties filed partial summary judgment motions, the board on January 30, 1995, and appellant on February 2, 1995. The motions addressed the limited issue of whether a student expelled from public school can earn home schooling credit for education received during the disciplinary expulsion. Following the filing of responsive motions, the trial court granted summary judgment in favor of the board on March 17, 1995.

This appeal followed with appellant claiming as error:

## I

"The trial court erred in granting summary judgment for appellee and denying appellants' request for recognition of academic credit earned through accredited home schooling during a period of disciplinary expulsion, where appellee, Board of Education, and Superintendent acted without statutory authority in denying such recognition."

## II

"The trial court erred in granting summary judgment for appellee and denying appellants' request for recognition of academic credit earned through accredited home schooling during a period of disciplinary expulsion, where Board of Education and Superintendent acted arbitrarily, capriciously and abused their discretion in failing to recognize academic credit."

## III

"The trial court erred in granting summary judgment for appellee and denying appellants' request for recognition of academic credit earned through accredited home schooling during a period of disciplinary expulsion, where Board of Education and Superintendent imposed academic penalties upon appellant which were unrelated to the breach of discipline for which appellant was expelled was a denial of substantive due process."

## IV

"The trial court erred in granting summary judgment for appellee and denying appellants' request for recognition of academic credit earned through accredited home schooling during a period of disciplinary expulsion, where students similarly expelled but attending a 'state chartered' school received automatic recognition of credit earned, [denying] appellant equal protection of the law."

## V

"The trial court erred in granting summary judgment for appellee and denying appellants' request for recognition of academic credit earned through accredited home schooling during a period of disciplinary expulsion where questions of fact exist as to whether appellant followed proper procedure in withdrawing from Westlake High School or in applying for home schooling."

Appellant basically asserts in his first four assignments of error that the board acted without statutory or administrative authority when it denied him credit for home schooling education acquired during a period of expulsion. He submits that this denial was an abuse of discretion, and denied him his rights to due process and equal protection. This court notes that except for two cases from Indiana and Pennsylvania, appellant fails to cite any statutory or legal authority in support of his position even with regard to our review of motion for summary judgment dispositions and his constitutional arguments. See App.R. 16(A)(7) and Loc.App.R. 6(6). Appellant nonetheless argues that the trial court erroneously granted judgment in favor of the board.

The granting of summary judgment is only appropriate if there is no genuine issue as to any material fact, and reasonable minds can come to but one conclusion which is adverse to the nonmoving party. *Toledo's Great E. Shoppers City, Inc. v. Abde's Black Angus Steak House No. III, Inc.* (1986), 24 Ohio St.3d 198, 201, 24 OBR 426, 427, 494 N.E.2d 1101, 1103–1104; Civ.R. 56(C). An order granting summary judgment will, therefore, only be upheld where the record discloses no genuine issue of material fact and the nonmoving party is entitled to judgment as a matter of law when construing the evidence most strongly in favor of the nonmoving party. *Johnson v. New London* (1988), 36 Ohio St.3d 60, 61, 521 N.E.2d 793, 794–795; *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 472, 364 N.E.2d 267, 274.

■ Summary judgment is a procedural device which is used to terminate litigation and, therefore, must be awarded with caution with all doubts resolved in favor of the nonmoving party. *Osborne v. Lyles* (1992), 63 Ohio St.3d 326, 333, 587 N.E.2d 825, 831; see, also, *Welco Industries, Inc. v. Applied Cos.* (1993), 67 Ohio St.3d 344, 617 N.E.2d 1129; *Murphy v. Reynoldsburg* (1992), 65 Ohio St.3d

356, 358–359, 604 N.E.2d 138, 139–140. However, it "forces the nonmoving party to produce evidence on any issue for which that party bears the production at trial." *Wing v. Anchor Media, Ltd. of Texas* (1991), 59 Ohio St.3d 108, 111, 570 N.E.2d 1095, 1099, citing *Celotex Corp. v. Catrett* (1986), 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265.

The issue in the present case is not whether the Academy provided "home education" in accordance with the law as required under R.C. 3321.04 [1] and Ohio Adm.Code 3301–34–01 [2] and 3301–34–02.[3] See, *e.g., State v. Schmidt* (1987), 29 Ohio St.3d 32, 29 OBR 383, 505 N.E.2d 627 (in freedom of religion case, requirement under R.C. 3321.04[A][2] that parents seek approval of superintendent for home education program does not infringe upon the right, as requirement furthers state's interest in education of its citizens; since parents failed to seek approval, court would not speculate as to superintendent's possible decision had parents submitted proposal); *Akron v. Lane* (1979), 65 Ohio App.2d 90, 19 O.O.3d 56, 416 N.E.2d 642 (defendant's conviction for violation of compulsory education laws, R.C. 3321.03, 3321.04 and 3321.38, affirmed since trial court could have found that defendant's home instruction program was neither a "school" nor "special education program," and superintendent disapproved of program). In other words, the parties at this point are not concerned with how many credits earned through the Academy were to be granted to appellant, and/or how these credits affected his placement under Ohio Adm.Code 3301–34–06.[4] The sole issue before this court is whether the board can outright deny appellant the opportunity to earn credits through any home schooling program during his term of expulsion.

■ R.C. 3319.01 provides that "the superintendent of a school district shall be the executive officer for the board." Since the superintendent is the executive officer of the board of education, when the superintendent acts, she acts on behalf

---

1. R.C. 3321.04 outlines, in part, how excuses from future attendance at school may be granted by a superintendent upon a showing that the student is being instructed at home "by a person qualified to teach the branches in which instruction is required, and such additional branches, as the advancement and needs of the child may, in the opinion of such superintendent, require."

2. Ohio Adm.Code 3301–34–01(B) defines "home education" as "education primarily directed and provided by the parent or guardian of a child under division (A)(2) of section 3321.04 of the Revised Code which child is of compulsory school age and is not enrolled in a nonpublic school."

3. Ohio Adm.Code 3301–34–02 sets forth a statement of purpose that includes the requirement that home education be in accordance with the law.

4. Ohio Adm.Code 3301–34–06 sets forth the procedure as to how a superintendent determines the appropriate placement of a home educated student in accordance with R.C. 3319.01.

of the board. R.C. 3319.01 specifically grants the determination of the appropriate placement of a student to the superintendent.

■ R.C. Title 33 vests Ohio's boards of education with the power and discretion to manage their schools and regulate the conduct of their students. See, *e.g.,* R.C. 3313.20 and 3319.01. Generally, courts must defer to the discretionary judgments of a school board when reviewing decisions of the board. See, *e.g., Bd. of Edn. of Rogers, Arkansas v. McCluskey* (1982), 458 U.S. 966, 102 S.Ct. 3469, 73 L.Ed.2d 1273; *Wood v. Strickland* (1975), 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214; *Greco v. Roper* (1945), 145 Ohio St. 243, 30 O.O. 473, 61 N.E.2d 307.

■ A court has no authority to replace the board's construction of its rules with its own, and consequently find that the board unreasonably interpreted its own rules. *Brannon v. Tiro Consol. School Dist. Bd. of Edn.* (1919), 99 Ohio St. 369, 124 N.E. 235, paragraph two of the syllabus; see *In re Appeal of Suspension of Huffer from Circleville High School* (1989), 47 Ohio St.3d 12, 546 N.E.2d 1308; *Rohrbaugh v. Elida Local Bd. of Edn.* (1990), 63 Ohio App.3d 685, 579 N.E.2d 782. A court may not, therefore, restrain a board from carrying into effect its determination of a discretionary question absent an abuse of discretion. *Brannon, supra,* paragraph three of the syllabus; *In re Appeal of Suspension of Huffer, supra.*

■ This court finds that the trial court's analysis of the board's decision to deny appellant credit for home schooling obtained during a period of expulsion is an appropriate analysis under R.C. Chapters 3313 and 3319 and the foregoing legal authorities. Therefore, we adopt the court's findings and conclusion as our own. The trial court's opinion reads as follows in material part:

"O.R.C. 3313.66 provides a statutory grant of authority to a school superintendent to enforce the disciplinary rules of the school district, including expulsion of a student from curricular or extra-curricular activities:

" 'The superintendent of schools of a city, exempted village, or local school district may expel a pupil from school for a period not to exceed the greater of eighty school days or the number of school days remaining in the semester or term in which the incident that gives rise to the expulsion takes place.'

"As Plaintiff notes in his motion for summary judgment, 'the statutory authority provides the superintendent with power to address attitude, behavior and discipline and consider the health and safety aspects of the student's attendance in the school system.' Under Westlake's expulsion policy ('JGE'), the penalty of expulsion is reserved for serious behavior problems, and is a 'total removal from the educational program for a prolonged period of time.' [Footnote omitted.] The 'total removal' of expulsion removes a student from a school and from all

school related activities (including both curricular and extra-curricular activities). Under Westlake's policy, this total removal from the academic program necessarily includes the non-recognition of any credit earned by the student during the expulsion. Despite this clear policy of 'total removal from the educational program,' the Commons family argues that an expelled student should be allowed to earn academic credit during expulsion.

"Plaintiff argues that the denial of credit earned during an expulsion is an unconstitutional denial of due process. Plaintiff cites cases in Indiana and Pennsylvania for their [sic] argument that academic penalties should not be part of behavioral punishment. *See, Smith v. School, City of Hobart,* 811 F.Supp. 391 (1993); *Katzman v. Cumberland Valley School Dist.* [84 Pa.Commw. 474], 479 A.2d 671 (1984). In the cases cited by Plaintiff the students' behavioral problems were punished by a reduction in the grades that they received in their classes. In both cases the courts held that it was improper to impose academic penalties for non-academic conduct. The courts reasoned that a student's grades should represent 'academic performance or achievement, *including the participation in class and presence in class.* Reducing grades unrelated to academic conduct results in a skewed and inaccurate reflection of a student's academic performance.' *Smith v. School, City of Hobart,* supra, at 397 (emphasis added). However, in this case, the penalty imposed on Michael Commons consists of expulsion—'total removal from the educational environment'—and any grade reduction or denial of credit is merely a consequence of his extended absence from school. As the Indiana court cited by plaintiff noted, participat[ion] and presence in class is an integral part of academic performance; when a student is removed from the educational environment because of a behavioral problem, his academics necessarily suffer. Westlake's interpretation of expulsion as a 'total removal from the educational program' is not an abuse of discretion nor an unreasonable exercise of the district's responsibility in reprimanding errant students.

"Under Westlake's expulsion policy, the only way that a student who is expelled from the Westlake schools can earn credit during the period of expulsion is to formally withdraw from the Westlake schools and enroll in another public or private state chartered school. Upon returning to the Westlake schools, the credit earned by that student in the other school would be automatically recognized. However, simply home-schooling an expelled student during the period of expulsion would not result in the automatic recognition of the student's work upon return to the Westlake schools. Michael Commons never formally withdrew from the Westlake schools, and never received authorization to have his home-schooling credits recognized by the Westlake schools. As such, he was

never guaranteed that his work in the Academy's home schooling program would result in automatic credit upon his return to the Westlake schools.

"When any child enters or re-enters a school district, Ohio law grants the local superintendent the exclusive right to determine the appropriate grade placement for the child. O.A.C. 3301–34–06. Thus, it was Superintendent Reep's duty to determine what grade Michael would be in upon his return to Westlake schools. Given that Michael could not earn credit during most of his second semester of Freshman year, if Michael returned to Westlake the next Fall, he would still need to complete the credits from the period of his expulsion.

"In 1969 the Montgomery County Court of Appeals considered a similar case in which an expelled student in his senior year requested that during the expulsion he be allowed access to his textbooks, and that he be given an opportunity to take his final examinations and receive his high school diploma. The Court rejected the student's request, holding that the Court would not interfere with the school's discretionary decision to deny the student's request absent an abuse of discretion or arbitrary, unreasonable or capricious action.

" 'The only rights of the expelled [student] are those to an appeal to and hearing by the board, and, if the board upholds the expulsion, to re-enter school after the current semester. He is not entitled to any other privileges or opportunities unless they are extended by grace of the school authorities. The statute provides none, and the court is without [the] authority to grant or impose them.' *State ex rel. Humphrey v. Adkins* (1969), 18 Ohio App.2d 101, 104 [47 O.O.2d 173, 174–175, 247 N.E.2d 330, 332].

"Likewise, the Westlake school district and superintendent have been statutorily granted the authority to create and enforce disciplinary rules including those governing expulsion. Westlake's expulsion policy is within the constitutional, statutory parameters set by O.R.C. 3313.66, and Westlake's policy of denying academic credit for work completed during an expulsion is a logical, necessary result of the purpose of expulsion: the 'total removal' of a student from the entire educational program. Plaintiff makes no allegations of procedural due process allegations [*sic*] as far as the requirements of notice and an opportunity to be heard are concerned, and the only issue presented to the court is the question of whether the policy of denying credit earned during expulsion is an abuse of discretion or unreasonable, arbitrary or capricious.

"Inasmuch as the policy of the Westlake schools is reasonable and because plaintiff has failed to demonstrate any abuse of discretion or unreasonable action on the part of the Westlake school district, plaintiff[s'] motion for summary judgment should be denied, and defendant's motion for summary judgment should be granted."

Appellant asserts in his fifth assignment of error that the trial court erroneously reviewed whether he and his parents followed the proper procedure to either withdraw appellant from school or apply for home schooling. He argues that this review exceeded the scope of the board's motion for summary judgment. However, our review of the trial court's judgment reveals that the court specifically found that the board acted within its discretion by denying any credit to appellant for his home schooling during a period of expulsion regardless of whether appellant properly applied for home schooling.

In accordance with the foregoing, appellant's assignments of error are overruled.

*Judgment affirmed.*

JAMES D. SWEENEY, P.J., and PATTON, J., concur.