DECISION AND JUDGMENT ENTRY
{¶ 1} Educational Services Institute, Inc., (the Institute) and Dr. Ann Grooms appeal a judgment of the Gallia County Common Pleas Court granting summary judgment to Gallia-Vinton Educational Service Center (ESC), Gallia-Vinton Educational Service Center Governing Board (the Board), and Roberta Duncan. Appellants contend the court erred in concluding the Institute's contracts with ESC were void. Because the Board exceeded its statutory authority by contracting with a corporation for the provision of superintendent services, we conclude the contracts between ESC and the Institute are void. Accordingly, we affirm the judgment of the trial court.
 {¶ 2} The Institute is an Ohio corporation and Grooms is its president. In 1997, the boards of education of Gallia and Vinton counties hired the Institute to draft a joint educational service center plan for submission to the State Board of Education. The State Board of Education approved the plan and in July 1997, ESC received its charter. In the years that followed, ESC entered into various contracts with the Institute for the provision of superintendent services. It is the last two of these contracts that are at issue here.
 {¶ 3} The first contract, dated June 2, 1999, covers the period of time between July 1, 1999, and June 30, 2002. The second contract, dated December 12, 2001, covers the period of time between July 1, 2002, and June 30, 2007. Each contract contains a section entitled "Scope of Work," which provides: "The Institute shall provide services to the Educational Service Center and carry out the work shown in Addendum A, Work Statement."[1] The work statement in the first contract states: "Provide services to the Gallia-Vinton Educational Service Center Governing Board and carry out the superintendent function as the chief executive officer." The work statement in the second contract states: "Provide services to the Gallia-Vinton Educational Service Center Governing Board for Dr. Ann Grooms to carry out the superintendent function as the chief executive officer." Following this statement, each contract contains a list of the functions to be carried out under the contract. Grooms has signed the contracts on behalf of the Institute, although she has failed to identify the capacity in which she signed.
 {¶ 4} In April 2002, the Board passed a resolution voiding the December 12, 2001 contract and rescinding the prior Board action that authorized the contract. The Board also passed a resolution terminating the June 2, 1999 contract and ordering Grooms to discontinue any services to the Board no later than May 1, 2002.
 {¶ 5} As a result of the Board's resolutions, appellants filed a complaint against ESC, the Board, and Roberta Duncan, the Board's president. The complaint alleged four causes of action: (1) breach of the June 2, 1999 contract; (2) breach of the December 12, 2001 contract; (3) a claim by the Institute against Duncan for intentional interference with a business relationship; and (4) a claim by Grooms against Duncan for harassment, which apparently is intertwined with the Institute's action for intentional interference with a business relationship. Subsequently, appellees filed a motion for summary judgment. In their motion, appellees argued the contracts with the Institute were void because the Institute is not a person with a valid superintendent's license and R.C. 3319.01 only authorizes the Board to appoint a person with a valid superintendent's license to act as superintendent. Additionally, appellees argued the contracts with the Institute were void because they lacked certificates of adequate revenue as required by R.C. 5705.412. Finally, appellees argued that if the contracts were void, appellants could not maintain an action for intentional interference with a business relationship. Following a hearing on the motion, the court concluded that ESC's contracts with the Institute were void and granted summary judgment in favor of appellees. Appellants now appeal and raise the following assignment of error: "The trial court erred in granting Defendants-Appellees' motion for summary judgment."
 {¶ 6} In reviewing a summary judgment, the lower court and appellate court utilize the same standard, i.e., we review the judgment independently and without deference to the trial court's determination. Midwest Specialties, Inc. v. Firestone Tire Rubber Co. (1988), 42 Ohio App.3d 6, 8, 536 N.E.2d 411. Summary judgment is appropriate when the following have been established: (1) that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence construed most strongly in its favor. Bostic v.Connor (1988), 37 Ohio St.3d 144, 146, 524 N.E.2d 881, citingHarless v. Willis Day Warehousing Co. (1978), 54 Ohio St.2d 64,66, 375 N.E.2d 46; cf., also, State ex rel. Coulverson v. OhioAdult Parole Auth. (1991), 62 Ohio St.3d 12, 14, 577 N.E.2d 352; Civ.R. 56(C). The burden of showing that no genuine issue exists as to any material fact falls upon the moving party in requesting summary judgment. Mitseff v. Wheeler (1988), 38 Ohio St.3d 112,115, 526 N.E.2d 798. If the moving party satisfies this burden, "the nonmoving party then has a reciprocal burden outlined in Civ.R. 56(E) to set forth specific facts showing that there is a genuine issue for trial, and if the nonmovant does not so respond, summary judgment if appropriate, shall be entered against the nonmoving party." Kulch v. Structural Fibers, Inc.,78 Ohio St.3d 134, 145, 1997-Ohio-217, 677 N.E.2d 308, citingDresher v. Burt (1996), 75 Ohio St.3d 280, 295, 662 N.E.2d 264.
 {¶ 7} In their sole assignment of error, appellants advance three reasons why summary judgment is inappropriate. However, we will restrict our discussion to appellants' first argument since our resolution of that argument requires us to affirm the court's decision. Here, appellants argue that nothing in the Revised Code prohibits an educational service center from contracting with a consulting company for the provision of superintendent services. They also argue that R.C. 3311.171 authorizes a board of education to employ consultants to perform administrative services.
 {¶ 8} Boards of education, including governing boards of educational service centers, are creations of statute. See Hallv. Lakeview Local School Dist. Bd. of Edn. (1992),63 Ohio St.3d 380, 383, 588 N.E.2d 785; Verberg v. Board of Edn. Of CitySchool Dist. of Cleveland (1939), 135 Ohio St. 246, 248,20 N.E.2d 368. See, also, Brownfield, Bowen, Bally Sturtz v.Board of Edn. (1977), 56 Ohio App.2d 10, 11, 381 N.E.2d 207. Accordingly, their authority is limited to those powers either expressly granted by or clearly implied from the statute. Hall;Brownfield. Thus, we must examine the appropriate statutes and determine whether the Board's contracts with the Institute are valid or void. Clearly, if the Board's actions exceeded its statutory authority, then its contracts with the Institute are void. See Brownfield, 56 Ohio App.2d at 11, citing 48 Ohio Jurisprudence 2d 778, Schools, Section 80 (holding that any board actions that exceed the clear provisions of the law are void.)
 {¶ 9} R.C. 3319.01 requires the governing board of an educational service center to "appoint a person possessed of the qualifications provided in this section to act as superintendent * * *." The person appointed to the office of superintendent must hold a superintendent's license issued under R.C. 3319.22, which directs the state board of education to adopt rules establishing the standards and requirements for obtaining educator licenses. See R.C. 3319.01; R.C. 3319.22(A). In response to the requirements of R.C. 3319.22, the state board of education enacted Ohio Adm. Code 3301-24-05. Ohio Adm. Code 3301-24-05(F) governs the requirements for obtaining a professional administrator license and provides that the license "shall be issued to an individual who holds a master's degree, who is deemed to be of good moral character, who has been recommended by the dean or head of teacher education at an institution approved to prepare teachers, who has successfully completed an examination prescribed by the state board of education, and who has evidenced the requirements specified below." (Emphasis added.) Furthermore, Ohio Adm. Code 3301-24-05(F)(3) provides that "[t]he superintendent license shall be added to a valid professional teacher license of an individual who holds a principal or administrative specialist license * * *." (Emphasis added.) Read together, the statute and code sections require the governing board of an educational service center to appoint an individual with a superintendent's license to act as superintendent. Although a corporation may be considered a "person" in many statutory contexts, a corporation is not an "individual" in this scheme.
 {¶ 10} Because the language in the work statements of the two contracts differ, we are essentially faced with two separate questions: (1) whether an educational service center may employ a corporation to carry out the superintendent function and (2) whether an educational service center may contract with a corporation for a specific corporate employee to carry out the superintendent function. We answer both questions in the negative.
 {¶ 11} The work statement in the June 2, 1999 contract provides that the Institute shall "[p]rovide services to the Gallia-Vinton Educational Service Center Governing Board and carry out the superintendent function as the chief executive officer." Neither party disputes that Grooms, who holds a valid superintendent's license, actually performed the superintendent function. However, the contract itself appoints the Institute to act as superintendent. This is contrary to the Board's authority under R.C. 3319.01, which requires the Board to appoint anindividual to act as superintendent. See R.C. 3319.01; Ohio Adm. Code 3301-24-05(F).
 {¶ 12} Appellants correctly note that a corporation can only act through its agents and employees. They argue that if the legislature requires a licensed individual to perform a task, the statute is satisfied if the person performing the task is licensed. However, R.C. 3319.01 requires the governing board to choose the individual that will act as superintendent. This is important because the superintendent, as the executive officer for the board, must work closely with the board and owes allegiance to the board, not another employer. Moreover, each candidate will possess unique skills, knowledge, experience, and expertise. It is the board's duty to determine which individual will best serve as the superintendent for its district. Thus, it is not enough for the governing board to appoint a corporation to the position of superintendent and allow the corporation to choose which of its employees will serve as superintendent. The board, itself, must appoint the individual that will serve as superintendent.
 {¶ 13} Appellants also argue that the legislature intended to give school boards flexibility in filling the role of superintendent. They argue that flexibility in filling the superintendent role is important given perpetual funding limitations and the need to recruit and hire the best-qualified candidates. While the legislature may have intended to give school boards flexibility in filling the superintendent position, any flexibility must be exercised within the bounds of the board's statutory authority. The need for flexibility cannot justify board action that exceeds the powers granted to it by statute.
 {¶ 14} To support their argument, appellants rely on Stateex rel. Sigall v. Aetna Cleaning Contractors of Cleveland, Inc.
(1976), 45 Ohio St.2d 308, 345 N.E.2d 61. However, Sigall
addressed whether the contracting out of custodial services by a state university violated the civil service laws. This is a far different question than that currently before us, namely, whether R.C. 3319.01 permits a board of education to contract with a corporation for the provision of superintendent services. Thus,Sigall has no bearing on the issue at hand
 {¶ 15} In framing this issue, appellants argue that contracting with a consulting company to provide for superintendent services is permissible because nothing in the Revised Code prohibits it. This argument ignores the nature of a school board's authority. Under appellants' argument, a school board has the power to act unless a specific statutory restriction prohibits it. However, as indicated, a school board's authority is limited to those powers expressly granted to it by statute, or clearly implied from it. Hall, supra. Thus, a school board has no authority to act unless a specific statute gives it such authority. While R.C. 3319.01 gives governing boards the authority to appoint a superintendent, the statute, when read in conjunction with Ohio Adm. Code 3301-24-05, requires the board to appoint an individual with a valid superintendent's license to act as superintendent. It does not permit the board to appoint a corporation to act as superintendent. Thus, the Board exceeded its authority when it appointed the Institute to act as superintendent.
 {¶ 16} Generally, we would declare the June 2, 1999 contract void at this point. However, appellants raise an additional argument that must be considered before we can reach a conclusion regarding the contract's validity. Appellants argue that R.C.3313.171 authorizes a board of education to employ consultants to perform administrative services. They argue that a board of education's authority to employ consultants to provide superintendent services can be inferred from its authority under R.C. 3313.171.
 {¶ 17} R.C. 3313.171 permits a board of education, including the governing board of an educational service center, to "expend funds for consultant services for any purpose related to the business administration of the school district * * *." However, a superintendent oversees not only the business affairs of the service center, but the educational affairs as well. See Hastings, Manoloff, Sheeran White, Ohio School Law (2002-03) 149, Section 7.2 ("In the exercise of its overall responsibilities, the board delegates to the superintendent the administration, both business and educational, of the district.") The superintendent is responsible for directing and assigning teachers and other employees of the educational service center. R.C. 3319.01. In addition, the superintendent is responsible for assigning the pupils to the proper schools and grades. R.C.3319.01. The superintendent is also required to make recommendations regarding the employment of all teachers, principals, assistant principals, assistant superintendents, and other necessary administrative officers. R.C. 3319.02; R.C.3319.07. More importantly, however, the superintendent is to "perform such other duties as the board determines." R.C.3319.01.
 {¶ 18} Given the statutory duties delegated to superintendents by the legislature, we are not convinced that the provision of superintendent services is what the legislature had in mind when they authorized school boards to employ consultant services "for any purpose related to the business administration of the school district." See R.C. 3313.171. Clearly, the superintendent's duties encompass far more than just the business administration of the school district. Thus, we find no merit in appellants' argument.
 {¶ 19} Because R.C. 3319.01 requires the governing board of an educational service center to appoint an individual to act as superintendent, the Board exceeded its statutory authority when it appointed the Institute to act as superintendent. Accordingly, the June 2, 1999 contract between ESC and the Institute is void.
 {¶ 20} We now turn our attention to the December 12, 2001 contract. The work statement in the December 12, 2001 contract states that the Institute shall "[p]rovide services to the Gallia-Vinton Educational Service Center Governing Board for Dr. Ann Grooms to carry out the superintendent function as the chief executive officer." This contract, rather than appointing the Institute to act as superintendent, designates a specific employee to carry out the superintendent function. The question then becomes: Can the governing board of an educational service center contract with a corporation for a specific corporate employee to act as superintendent? We answer this question in the negative. R.C. 3319.01 requires the governing board to contract directly with the individual it appoints as superintendent. Moreover, the nature of the superintendent's role requires a direct contract between the governing board and the superintendent.
 {¶ 21} R.C. 3319.01 provides that at the time of appointing the superintendent, the governing board "shall execute a written contract of employment with such superintendent." The use of the language "with such superintendent" indicates that the legislature intended the governing board to contract directly with the superintendent. Had the legislature intended to permit the board to contract with a corporation for one of its employees to act as superintendent, the legislature would have directed the board to execute a written contract for superintendent services. Instead, the statute specifically directs the board to execute a written employment contract with the superintendent.
 {¶ 22} Additionally, the nature of the superintendent's role requires a direct contract between the board and the superintendent. The superintendent is the executive officer for the board. R.C. 3319.01. As such, he or she is responsible for implementing the rules and regulations of the board. See Deryckv. Akron City School Dist. (Dec. 12, 1990), Summit App. No. 14660. When the superintendent acts, he or she acts on behalf of the board. Commons v. Westlake City Schools Bd. of Edn. (1996),109 Ohio App.3d 706, 672 N.E.2d 1098. Furthermore, the superintendent oversees the daily operation of the schools and answers to the board "for all instructional and supervisory aspects of education, as well as for financial and business affairs of the district." Hastings, Manoloff, Sheeran White, Ohio School Law (2002-03) 150, Section 7.2.
 {¶ 23} If the board hired a superintendent through a corporation, that individual's ultimate accountability would lie with the corporation because the corporation would be his or her direct employer. However, the superintendent's role within the educational service center requires that he or she be directly accountable to the board, not another employer. Thus, the relationship between the board and the superintendent must be a direct employment relationship. Accordingly, the board must contract directly with the superintendent.
 {¶ 24} Given the language of R.C. 3319.01 and the superintendent's role, we conclude a governing board is not permitted to contract with a corporation for a specific employee to act as superintendent. Rather, the board must execute a contract with the individual it appoints as superintendent. Thus, the Board exceeded its authority when it entered into a contract with the Institute for Grooms to act as superintendent. Therefore, the December 12, 2001 contract is void.
 {¶ 25} Because the Board exceeded its authority when it entered into the contracts with the Institute, those contracts are void. Accordingly, appellant's assignment of error has no merit and the judgment of the trial court is affirmed.
Judgment affirmed.
Kline, P.J. Evans, J.: Concur in Judgment and Opinion.
[1] The June 2, 1999 contract uses the word "assistance" in place of the word "services".