**BOARD OF EDUCATION OF CLEVELAND HEIGHTS et v STATE ex GOLDMAN**

Ohio Appeals, 8th Dist, Cuyahoga Co

No 13880.   Decided April 2, 1934

G. E. Hartshorn, Cleveland, for plaintiff in error.

Ben B. Goldman, Cleveland, for defendant in error.

**OPINION**

By McGILL, J.

Apparently this is a case of first impression in Ohio, and counsel have been unable to find a case anywhere in the United States which gives the right to exclude from all educational facilities any child within the prescribed ages upon the basis of an intelligence test. It is, therefore, necessary to look to the provisions of the statutes of Ohio with reference to the right to refuse this child admission to the schools, and to seek to determine the intent of the Legislature.

It is to be noted that there is a sharp conflict in the evidence concerning the results of I. Q. tests given to this particular child.

The record discloses that in September, 1932, a Miss Wager gave a test showing an I. Q. of 44. Again, in November, 1932, a Dr. Markey gave the child a test with a result of 61. The next test was made by the Brush Foundation of Cleveland on May 8th, 1933, and according to information given by the Superintendent, although no representative of the Brush Foundation testified, the result was 47. On October 23rd, 1933, a Dr. Newcomb examined the child and found her to have an I. Q. of 55.

The authorities seem to be in agreement that a slight variation is not a determinative factor. For example, counsel for the Board of Education, in his brief, calls attention to the testimony of Dr. Henry H. Goddard, as perhaps the most learned and experienced expert who was on the stand in the court below. Among other things, Dr. Goddard testified:

"Q. Doctor, would you say that if children having an I. Q. of 50 are considered educable, that a child having an I. Q. of 47 should also be so considered?

"A. Of course, there is a limit to that sort of thing. I might answer yes to that question, and then you would run down three points more and I would get into trouble. The fact is, that 50, or 47, or 53 or anything in that line, in itself, is not enough. The moment you fix a point of that sort you get into difficulty. One child with an I. Q. of 40 is more educable, perhaps, than another child with an I. Q. of 50."

Turning now to the statutes of Ohio we find that §7681 **GC** provides that the schools shall be free to all youth between six and twenty-one years of age.

Sec 7690 GC provides that the Board of Education has the management and control of all schools of whatever name and character in the District.

Sec 7644 GC provides that each Board of Education shall establish a sufficient number of elementary schools to provide for the free education of the youth of school age within the district under its control.

Sec 7762 GC provides that a child between six and eighteen years of age is of compulsory school age.

The matter of the exclusion of children who may be incapable of profiting substantially by further instruction is treated in §7762-7 **GC** and, although lengthy, it is in full as follows:

"Sec 7762-7 GC DETERMINATION OF CAPACITY OF CHILD THROUGH EXAMINATIONS OR TESTS; RESULT OF SUCH EXAMINATION OR TEST; REVOCATION; ADMISSION TO PUBLIC SCHOOLS DENIED WHILE UNDER BAN.

"A child of compulsory school age may be determined to be incapable of profiting substantially by further instruction as follows, to-wit:

"The department of education may prescribe standards and examinations or tests by which such capacity may be determined and prescribe and approve the agencies or individuals by which they shall be applied and conducted; but the capacity of a child to benefit substantially by further instruction shall be determined with reference to that available to the particular child in the public schools of the district in which he resides, and no child shall be determined to be incapable of profiting substantially by further instruction if the department of education shall find that it is feasible to provide for him in such district, or elsewhere in the public school system, special classes or schools, departments of special instruction or individual instruction through or by which he might profit substantially, according to his mental capacity as so determined. In prescribing, formulating, applying and giving such standards, examinations or tests, the department of education may call for assistance and advice upon any other department or bureau of the state government, or upon any appropriate department of any university supported wholly or partly from state appropriations.

"The result of each examination or test made hereunder, with the recommendation of the agency or individual conducting the same, shall be reported to the department of education, which shall have power to make the determination herein authorized. If a child be determined hereunder to be incapable of profiting substantially by further instructions, such determination shall be certified by the department of education to the superintendent of schools of the district in which he resides, who shall place such child under the supervision of a visiting teacher or of an attendance officer, to be exercised as long as he is of compulsory school age. The department of education shall keep a record of the names of all children so determined to be incapable of profiting substantially by further instruction and a like record of all such children residing in any school district shall be kept by the superintendent of schools of such district. Upon request of the parents, guardians, or persons having the care of such child whose residence has been changed to another school district the superintendent of schools shall forward a card showing the status of such child as so determined to the superintendent of schools of the district to which the child has been moved.

"Any determination made under this section may be revoked by the department of education for good cause shown.

"A child determined to be incapable of profiting substantially by further instruction, as herein provided, shall not thereafter be admitted to the public schools of the state while such determination remains in force, anything in chapter four of this title to the contrary notwithstanding."

The record in this case discloses that after the Board of Education of Cleveland Heights determined that this child was unable to profit substantially by further instruction, the matter was submitted to the Department of Education at Columbus, which department at first approved the exclusion of the child. Later, the Department revoked the approval or determination and finally passed the entire matter back to the local board.

As a matter of common sense it is apparent that a moron of very low type, or an idiot or imbecile who is incapable of absorbing knowledge or making progress in the schools, ought to be excluded. On the other hand every child between the ages of six and eighteen years of age in the State of Ohio is not only entitled to be admitted to the public schools, but is compelled to attend.

There is no doubt but that school authorities possess the power to conduct the schools, and to make rules and regulations for their proper government and management. There is no doubt but that school boards in the exercise of their powers in these matters have a wide discretion and that the courts will not interfere with that exercise of sound discretion in the absence of an abuse thereof.

It is to be borne in mind, however, that not only is compulsory attendance required by our laws, but also that the right to attend our public schools belongs to the people. Education for all youth is deemed of paramount importance. It is the foundation of popular government and is considered so essential that between certain ages children must attend our schools.

The question arises as to where the authority to exclude a child of low mentality is vested. The question in this case is whether or not this child was legally refused admission to the schools. A careful study of §7762-7 GC leads us to the conclusion that the Department of Education may prescribe the standards and examinations or tests and approve the agencies or individuals by which they shall be applied and conducted, but that under that section a determination of the question must be finally made by the Department of Education which counsel for the Board of Edu-

cation concedes means the State Department of Education. In this case the Department of Education made no final determination. Without such final approval or determination by the Department of Education, we think that this child was not excluded in accordance with the provisions of the statute, and that the court below was right in granting a peremptory writ of mandamus.

Accordingly the judgment of the Common Pleas Court is affirmed.

LIEGHLEY, PJ, and LEVINE, J, concur in judgment.