The STATE ex rel. BARNO, Appellant,

v.

CRESTWOOD BOARD OF EDUCATION et al., Appellees.

[Cite as *State ex rel. Barno v. Crestwood Bd. of Edn.* (1998), 134 Ohio App.3d 494.]

Court of Appeals of Ohio,
Eleventh District, Portage County.

Decided June 22, 1998.

496

Jennifer Barno, pro se.

Gary Lee Pierce and Douglas K. Paul, for appellees.

Nader, Presiding Judge.

In this case we are squarely confronted with the question whether a board of education may validly enact a student attendance policy that denies a high school senior her diploma solely as a consequence of absenteeism. It is an issue of first impression in Ohio, and, insofar as the procedural posture of this appeal is unique, we believe it to be an issue of first impression for the entire nation.

## I

In the spring of 1997, appellant, Jennifer L. Barno, was a senior at the Maplewood Area Joint Vocational School in Ravenna, Ohio. A few days before her class was scheduled to graduate, Jennifer filed an action for a writ of mandamus in the Portage County Court of Common Pleas against the appellees, various superintendents and the boards of education of her home school and the vocational school. For cause, Jennifer stated that she had successfully completed the vocational school's curriculum, earning a grade point average of 3.966 out of 4.0 through the first five grading periods of her senior year, and that she had passed all the proficiency tests that were required by state law. She argued that appellees had a clear duty under R.C. 3313.61 [1] to issue her a high school diploma and that appellees had violated that duty when they informed her she would not receive academic credit for her senior year.

The trial court issued an alternative writ, and on the return day, the appellees responded that Jennifer was not entitled to a diploma because she had not completed the "curriculum" as defined by the Maplewood JVS Board of Education. The board had enacted a strict attendance policy requiring each student to attain a ninety-three-percent attendance rate to receive academic credit. Since the school year was one hundred eighty-two days long, a student could be

---

1. R.C. 3313.61 states:

"(A) A diploma shall be granted by the board of education of any city, exempted village, or local school district that operates a high school to any person to whom all of the following apply:

"(1) The person has successfully completed the curriculum in any high school or the individualized education program developed for the person by any high school pursuant to section 3323.08 of the Revised Code;

"(2) The person has attained at least the applicable scores designated under division (B) of section 3301.0710 of the Revised Code on all the tests required by that division unless the person was excused from taking any such test pursuant to division (C)(1) of section 3301.0711 or section 3313.532 of the Revised Code or unless division (H) of this section applies to the person;

"(3) The person is not eligible to receive an honors diploma granted pursuant to division (B) of this section.

"No diploma shall be granted under this division to anyone except as provided under this division."

absent approximately thirteen days and still graduate. This policy, which was adopted in 1986 or 1987, was published every year in the student handbook. Jennifer received a copy of the 1996–1997 student handbook explaining the policy.

Jennifer was absent a total of eighteen and one-half days her senior year. All but two of these were excused,[2] but under the terms of the Maplewood policy, both excused and unexcused absences count against the student when figuring the final attendance rate. The principal of the JVS informed Jennifer that she would not be allowed to graduate because of her poor attendance.

Jennifer filed an extenuating-circumstances form to request reinstatement of her academic credit, asserting that her absences were due to minor personal illnesses and a family vacation. This form was considered by a credit-reinstatement committee consisting of the principal and three teachers at the JVS, but the committee did not find that these were adequate extenuating circumstances. Jennifer filed an "appeal," which can best be described as a request for reconsideration. In an attached memorandum, Jennifer provided a more detailed statement of her claim of extenuating circumstances. She alleged that her attendance records were inaccurate because she had been in the school clinic on one of the days the school recorded her as being truant.[3] She also requested special consideration because she worked approximately twenty hours per week while attending school. The committee again denied reinstatement notwithstanding the additional considerations.

On these facts, the matter was submitted to the court.

## II

For a writ of mandamus to issue, the relator must demonstrate that she has a clear right to the requested relief, that the respondents have a clear legal duty to perform the requested actions, and that she has no adequate remedy in the ordinary course of law. *Hardrives Paving & Constr., Inc. v. Niles* (1994), 99 Ohio App.3d 243, 246, 650 N.E.2d 482, 483–484; *State ex rel. Jones v. Smith* (May 15, 1998), Trumbull App. No. 97–T–0178, unreported, 1998 WL 258160.

---

2. There was some ambiguity in the record whether the time Jennifer spent on her family vacation during her senior year was excused. Jennifer submitted an approval-request form before going on vacation. The principal wrote on this form that, in her opinion, the vacation would take Jennifer too close to losing academic credit under the policy, so she would not "condone" it. However, the days Jennifer was absent were marked as excused absences on the attendance card. For the purposes of this appeal, we will construe these absences as being excused.

3. The school nurse testified by way of affidavit that her records did not show that Jennifer had been in the clinic on the day in question.

The trial court addressed the merits of the issue without determining whether Jennifer had an adequate remedy at law. That omission is not fatal to the court's judgment because we can independently determine that an extraordinary writ is an appropriate remedy under these circumstances.

## A

■ The trial court remarked in its judgment entry that Jennifer did not appeal the reinstatement committee's denial of her motion to reconsider. In oral argument, Jennifer claimed that no one informed her of a right of appeal to either the board of education or the superintendent of the joint vocational school district. That claim is supported by the record because the student handbook does not contain any provisions regarding a right of appeal from the reinstatement committee's determination.

Presumably, the court meant that Jennifer could have appealed directly to the court of common pleas under R.C. 2506.01. We disagree.

■ Courts may review only quasi-judicial administrative proceedings under R.C. 2506.01. *DeLong v. Southwest School Dist. Bd. of Edn.* (1973), 36 Ohio St.2d 62, 65 O.O.2d 213, 303 N.E.2d 890. Whether such proceedings before the administrative tribunal are quasi-judicial depends on whether the aggrieved party had a right to notice and an opportunity to be heard. *In re Appeal of Howard* (1991), 73 Ohio App.3d 717, 598 N.E.2d 165. The fact that the tribunal actually afforded these rights is not material to the inquiry, which focuses on whether the tribunal was *required* to afford these rights. *Id.* These procedures, notice and an opportunity to be heard, are required under the United States Constitution only where the state seeks to deprive a person of a right to life, liberty, or property that is somehow conferred by state law. *Cleveland Bd. of Edn. v. Loudermill* (1985), 470 U.S. 532, 538, 105 S.Ct. 1487, 1491, 84 L.Ed.2d 494, 501.

■ Although R.C. 3313.48 and 3313.64, which provide for a free public education in Ohio, have been interpreted as conferring a statutory right upon our children to *attend* school so that school officials may not deprive a student of that right without due process of law, *Goss v. Lopez* (1975), 419 U.S. 565, 573, 95 S.Ct. 729, 735–736, 42 L.Ed.2d 725, 733–734, that interest was not at stake in this case. Jennifer was not deprived of her right to attend Maplewood JVS; she was denied academic credit for her senior year. There is no comparable statutory or case law that confers upon her a right to academic credit so that school officials would be compelled to afford notice and an opportunity to be heard before deciding to deny it.

Since there was no liberty or property interest created by state law at stake before the reinstatement committee, it was not required under the Due Process

Clause to afford Jennifer any procedural safeguards whatsoever, and these were not quasi-judicial proceedings from which an appeal would lie pursuant to R.C. 2506.01.

Jennifer had no right of appeal under the policy or under R.C. 2506.01, so neither of these barred the court from considering her petition in mandamus.

B

Hypothetically, Jennifer could have filed an action for an injunction or for declaratory judgment in order to obtain judicial review of Maplewood's attendance policy. However, an action for mandatory injunction does not bar mandamus because the injunction itself is not a remedy available in the ordinary course of law. *State ex rel. Levin v. Schremp* (1995), 73 Ohio St.3d 733, 735, 654 N.E.2d 1258, 1260–1261.

Similarly, the availability of declaratory judgment does not automatically bar the issuance of a writ of mandamus, but may be considered by a court as an element in exercising its discretion whether a writ should issue. *State ex rel. Fenske v. McGovern* (1984), 11 Ohio St.3d 129, 11 OBR 426, 464 N.E.2d 525, paragraph two of the syllabus.

A remedy at law will be regarded as adequate and therefore as sufficient grounds to refuse a petition for a writ of mandamus only where the remedy offers complete, beneficial, and speedy relief. *State ex rel. Horwitz v. Cuyahoga Cty. Court of Common Pleas, Probate Div.* (1992), 65 Ohio St.3d 323, 328, 603 N.E.2d 1005, 1009. That is to say, the remedy must be adequate under the circumstances. *State ex rel. Butler v. Demis* (1981), 66 Ohio St.2d 123, 124, 20 O.O.3d 121, 121–122, 420 N.E.2d 116, 117.

The credit-reinstatement committee denied Jennifer's motion for reconsideration on Friday, May 23, 1997. Her class was scheduled to graduate on Sunday, June 8, 1997. This left only sixteen days for Jennifer to obtain judicial review. The facts of this case are analogous to an election case, where a voter or candidate seeks court review of the actions of election officials before a ballot is scheduled to be taken, in a few days. In such cases, the Supreme Court has repeatedly held that declaratory judgment is inadequate because it is too slow, being governed by traditional rules of civil procedure, including a twenty-eight-day period which the defendants have in which to answer. *E.g., State ex rel. Arnett v. Winemiller* (1997), 80 Ohio St.3d 255, 259, 685 N.E.2d 1219, 1222; *State ex rel. Purdy v. Clermont Cty. Bd. of Elections* (1997), 77 Ohio St.3d 338, 341, 673 N.E.2d 1351, 1354. Likewise, in this case, an action for declaratory judgment would have been too slow to afford Jennifer complete relief.

Since Jennifer did not have an adequate remedy in the ordinary course of law, the trial court properly addressed the merits of her petition.

## III

The trial court, in its judgment entry, lectured Jennifer about accepting the consequences of her actions, then denied her petition, holding, in essence, that she was not entitled to a diploma and that the respondents were not required by law to give her one. The court relied on the fact that the attendance policy was clearly set forth in the student handbook, a copy of which Jennifer had received, and that the appeal procedures allowed by the school afforded her an adequate opportunity to be heard on the matter. Jennifer asserts in her single assignment of error that the trial court's analysis is erroneous. We agree.

The court's opinion borrows heavily from concepts of procedural due process in analyzing whether Maplewood's attendance policy was valid, but the issue whether the policy violated Jennifer's due process rights was not before the court. Jennifer did not argue that Maplewood's policy was *unconstitutional*, as most litigants have done;[4] she argued it was *unreasonable*.

### A

R.C. 3313.47 and 3313.20(A) give boards of education authority to make policies that are necessary for the government of its schools and students. Undoubtedly, this general policy-making authority includes the power to enact attendance policies, as these are necessary for the day-to-day governance of the students. What kind of policy should be enacted is a matter generally left to the sound discretion of the boards of education.

But it has long been held in Ohio that any policies enacted by boards of education pursuant to these statutes must be reasonable. *Sewell v. Defiance Union School Bd. of Edn.* (1876), 29 Ohio St. 89, 1876 WL 47; *Royer v. C.R. Coblentz Local School Dist. Bd. of Edn.* (1977), 51 Ohio App.2d 17, 5 O.O.3d 138, 365 N.E.2d 889; *Jacobs v. Benedict* (1973), 39 Ohio App.2d 141, 68 O.O.2d 343,

---

4. Constitutional challenges to school attendance policies have not met with much success in this country. See, *e.g., Campbell v. New Milford Bd. of Edn.* (1984), 193 Conn. 93, 475 A.2d 289; *Raymon v. Alvord Independent School Dist.* (C.A.5, 1981), 639 F.2d 257; *Knight v. Tri-Point Community Unit School Dist. No. 6J Bd. of Edn.* (1976), 38 Ill.App.3d 603, 348 N.E.2d 299; *Tumbleson v. Clifton* (May 30, 1997), S.D.Ohio No. C–3–97–178, unreported (adopting the magistrate's report and recommendation). These cases are distinguishable, however, in that Jennifer makes no constitutional claim here. She challenges the attendance policy as exceeding the scope of the enabling statutes, making it an abuse of discretion for the Board of Education of the Maplewood School District to have enacted it. Our research has not uncovered a single case in Ohio or elsewhere in which a similar argument has been made.

316 N.E.2d 898; *Laucher v. Simpson* (1971), 28 Ohio App.2d 195, 57 O.O.2d 303, 276 N.E.2d 261; *Holroyd v. Eibling* (1962), 116 Ohio App. 440, 22 O.O.2d 264, 188 N.E.2d 797; *Clark v. Hamilton Local School Dist. Bd. of Edn.* (C.P.1977), 51 Ohio Misc. 71, 5 O.O.3d 301, 367 N.E.2d 69; *Warren v. Perry Local School Dist. Bd. of Edn.* (C.P.1974), 41 Ohio Misc. 87, 70 O.O.2d 178, 322 N.E.2d 697; *Gfell v. Rickelman* (C.A.6, 1971), 32 Ohio Misc. 207, 441 F.2d 444.

The second paragraph of the syllabus of *Sycamore Bd. of Edn. v. State ex rel. Wickham* (1909), 80 Ohio St. 133, 88 N.E. 412, states:

"The statutes of the state relating to education which give control and management of the public schools to the boards of education of the several districts, authorize such boards to establish rules and regulations for the government of the schools, and, *so far as rules so established are reasonable,* and fairly calculated to insure good government and promote the ends of education, [they] will be sustained by the courts." (Emphasis added.)

█ If a board of education exceeds the power conferred by R.C. 3313.47 and 3313.20(A) by enacting an unreasonable policy, it can be said the board has abused its discretion, and mandamus will lie to compel school officials to do an act that is required by law notwithstanding the illegitimate policy. See *Cleveland Hts. Bd. of Edn. v. State ex rel. Goldman* (1934), 47 Ohio App. 417, 191 N.E. 914; *State ex rel. Baker v. Stevenson* (C.P.1962), 27 O.O.2d 223, 189 N.E.2d 181, 94 Ohio Law Abs. 545; *State ex rel. Idle v. Chamberlain* (C.P.1961), 12 Ohio Misc. 44, 39 O.O.2d 262, 175 N.E.2d 539.

█ Courts are not confined to the narrow patterns of logic that have developed in the case law interpreting specific constitutional provisions when deciding whether a school policy is unreasonable. Instead, such policies must be evaluated by the standards of ordinary common sense, tempered with judicial experience, and guided by considerations of public policy manifested in relevant statutory, administrative, and decisional law.

B

█ Upon carefully considering the terms of Maplewood's policy, we find that it has three condemnable features and is therefore unreasonable on its face.[5]

---

**5.** While we harbor doubts as to whether it was reasonable to deny Jennifer the right to graduate even though she completed her course work with straight A's, there is no need in this case to analyze the various problems in the application of the policy to any particular student since we are striking it down on its face.

 The first of these is that the policy purports to make attendance a prerequisite for academic credit. This is tantamount to making attendance a part of the curriculum at the Maplewood JVS.

R.C. 3313.60 states:

"(A) The board of education of each city * * * shall prescribe a curriculum for all schools under their control. * * * [I]n any such curriculum there shall be included the study of the following subjects:

"(1) The language arts, including reading, writing, spelling, oral and written English, and literature;

"(2) Geography, the history of the United States and of Ohio, and national, state, and local government in the United States, including a balanced presentation of the relevant contributions to society of men and women of African, Mexican, Puerto Rican, and American Indian descent as well as other ethnic and racial groups in Ohio and the United States;

"(3) Mathematics;

"(4) Natural science, including instruction in the conservation of natural resources;

"(5) Health education, which shall include instruction in:

"(a) The nutritive value of foods, including natural and organically produced foods, the relation of nutrition to health, the use and effects of food additives;

"(b) The harmful effects of and legal restrictions against the use of drugs of abuse, alcoholic beverages, and tobacco;

"(c) Venereal disease education, except that upon written request of his parent or guardian, a student shall be excused from taking instruction in venereal disease education;

"* * *

"(6) Physical education;

"(7) The fine arts, including music;

"(8) First aid, including a training program in cardiopulmonary resuscitation, safety, and fire prevention, except that upon written request of his parent or guardian, a student shall be excused from taking instruction in cardiopulmonary resuscitation.

"* * *

"(C) Except as provided in division (E) of this section, every high school shall include in the requirements for graduation from any curriculum one unit of

American history and government, including a study of the constitutions of the United States and of Ohio."

 When a law contains a long list of items that must be adopted and delegates the power to adopt other items to an inferior body, one canon of statutory construction known as *ejusdem generis* holds the other items enacted by the inferior body must be of a character the same as or similar to the character of those on the list. See *Light v. Ohio Univ.* (1986), 28 Ohio St.3d 66, 68, 28 OBR 165, 167–168, 502 N.E.2d 611, 613–614; *Div. of Wildlife v. Barker* (1983), 8 Ohio St.3d 39, 41, 8 OBR 401, 402–403, 457 N.E.2d 312, 314–315, fn. 3; *State v. Hooper* (1979), 57 Ohio St.2d 87, 89–90, 11 O.O.3d 250, 251–252, 386 N.E.2d 1348, 1349–1354. *State v. Aspell* (1967), 10 Ohio St.2d 1, 4, 39 O.O.2d 1, 2–3, 225 N.E.2d 226, 228 states:

"A well-known legal maxim is 'ejusdem generis,' which literally translated means 'of the same kind or species.' So, where in a statute terms are first used which are confined to a particular class of objects having well-known and definite features and characteristics, and then afterwards a term is conjoined having perhaps a broader signification, such latter term is, as indicative of legislative intent, to be considered as embracing only things of a similar character as those comprehended by the preceding limited and confined terms."

 The doctrine is equally applicable to the opposite sequence, where general words are followed by a list of specific ones. 2A Sutherland, Statutes and Statutory Construction (5 Ed. 1992) 188, Section 47.17.

Here the curriculum statute clearly indicates that a school's curriculum is a list of courses for study, or a set of subjects which the student must learn in order to complete his or her education. It prescribes the core subjects that must be taught in every school, including geography, history, mathematics, natural science, health, etc. This list is not exhaustive, however. The statute can fairly be read as establishing the minimum set of subjects that is to be included in every school curriculum but reserving to the school board the right to add additional subjects to a particular curriculum. Since the listed items all share a common characteristic—they are subjects to be studied—we take the structure of the statute as an indication that individual boards of education may add only other subjects of study to the curriculum.

Attendance is not a subject of study in the same sense as are geography, history, or mathematics. There is no textbook for it, there are no lectures on it, and students cannot be tested by a traditional examination of questions and answers.

■■ The public policy inherent in the structure of R.C. 3313.60 suggests that any school policy that makes attendance a part of the academic curriculum, even at a vocational school,[6] is unreasonable.

### 2

The second condemnable feature of Maplewood's attendance policy is that it counts both excused and unexcused absences against the student for attendance purposes. This makes little sense, even in light of the professed goal of vocational education to prepare students for the workplace. Teaching good attendance habits is a specific method of teaching personal responsibility. If the student learns to request permission for an absence, he or she has learned to be responsible. In the work world, no employer would reasonably terminate an employee for taking an authorized vacation. Yet Maplewood's attendance policy punished Jennifer for taking a vacation with her family that the school had authorized in accordance with the student handbook. This is patently absurd.

■■ We disagree with those who hold that an attendance policy should punish excused absences on the theory that the excused student has missed the class work the same as the unexcused student. See *Commons v. Westlake City Schools Bd. of Edn.* (1996), 109 Ohio App.3d 706, 672 N.E.2d 1098.[7] See, also, the

---

6. To be sure, education in a vocational school is different from that in a traditional secondary school. In the former, students enroll in job-training programs, wherein they are taught marketable skills, such as welding or automobile repair. While a plausible argument could be made that attendance is more a part of a job-training program than it is of a traditional course of study, the definition of "curriculum" as meaning subjects of study still applies. At a vocational school, students focus their studies on career skills. The board of education of a vocational district has the authority to define what classes a student shall be required to take, in order to adequately learn the skills necessary to pursue a particular career, such as culinary arts or restaurant management, but that body cannot make attendance an integral part of the overall vocational program. The goal of vocational education is to teach the culinary arts student to cook, and, if she has learned her lessons, she will know how to cook, regardless of her punctuality. Furthermore, Jennifer's report cards that were submitted as part of the record show that she took math and science courses while attending Maplewood. This leads us to conclude that vocational schools are not so different from ordinary high schools that courts should treat them differently when assessing the reasonableness of their attendance policies.

7. The plaintiff in *Commons* was suspended for eighty days after bringing a handgun to school. His parents notified the superintendent that they intended to enroll their son in a home schooling program. The principal of the high school informed the parents that the school would not give their son academic credit for his studies in the home schooling program. The superintendent agreed that no credit would be given. Upon returning to school, the plaintiff had to repeat the ninth grade. He filed a complaint for declaratory judgment, arguing that the school officials had violated his right to due process by refusing to recognize the credits he earned through the home study course. The court of appeals rejected the plaintiff's arguments, relying in part on the reasoning of the trial judge, who stated that any grade reduction

opinion of New York's Commissioner of Education, quoted in Pepe et al., *Academic Penalties For Attendance Reasons*, in A Legal Memorandum of the National Association of Secondary School Principals (Mar. 1985) 4. First, Jennifer's transcript refutes the notion that good attendance is absolutely critical to learning high school material. Second, as we have stated, attendance rules impart a separate lesson regarding personal responsibility. The excused student has behaved responsibly. The unexcused student has not. These are good grounds to treat them differently.

■ The General Assembly has recently addressed this topic, and, in a bill that has not yet become effective, schools are prohibited from issuing a diploma to a student with more than ten truancies. 1997 Am.Sub.S.B. No. 55, codified at R.C. 3313.609 (eff. July 1, 1998). "Truant" is defined as being "absent without excuse." *Id.* The General Assembly could have provided that no diploma should issue when a student has ten or more absences, whether excused or not. But the penalty falls only on truants. This statute evinces the policy in this state to apply severe academic penalties only in cases where students are absent without excuse. An attendance policy that imposes a similar sanction on students with excused absences contravenes that public policy. Cf. *Gutierrez v. School District R–1* (1978), 41 Colo.App. 411, 585 P.2d 935 (attendance policy that counts excused absences against the student when considering final attendance rate was void because it contravened Colorado compulsory school attendance law that counted days absent for temporary illness, suspensions, or expulsions in favor of the student).

These considerations suggest that any school attendance policy that treats excused absences the same as unexcused absences when figuring the final attendance rate for the school year is unreasonable.

### 3

The third condemnable feature of Maplewood's attendance policy is that the board of education failed to specify in the student handbook what the members of

---

or denial of credit for the ninth grade was "merely a consequence of his extended absence from school." *Id.* at 714, 672 N.E.2d at 1103.

We would agree with the *Commons* court that it was not an abuse of discretion for the superintendent to have required the plaintiff to repeat the ninth grade after being absent for eighty consecutive days. It is clear under those facts that the plaintiff could not have received the benefit of his ninth grade studies at the high school, if his home study course work were disregarded.

This case is different, however. Jennifer missed only eighteen and one-half days. These comparatively few absences were scattered about her senior year. Despite these absences, Jennifer passed all her exams at Maplewood with flying colors. Clearly, Jennifer has received the benefits of her twelfth grade studies. Unlike the situation in *Commons*, there is no need to make Jennifer repeat a grade.

the reinstatement committee should consider when deciding what extenuating circumstances would excuse a particular student's poor attendance rate. It is our understanding that the principal and the other members of the committee filled this void by inventing their own criteria, which were reduced to writing for the purposes of this litigation, but which have never been revealed to the student body.

There are three problems with this arrangement. First, without a fixed set of standards, extenuation lies in the eye of the beholder. One school official asked to serve on the credit-reinstatement committee might accept a personal illness, for example, where another might not. Second, even if the members of the committee privately agree upon what they will accept as valid extenuating circumstances, as is alleged to have occurred in this case, the standards might change with the composition of the committee. Third, and most important, the students themselves were not given the appropriate information necessary to prepare for the reinstatement hearing. It is difficult, if not impossible, for a student to adequately defend himself or herself against a charge of excessive absenteeism if the committee decides the student's fate by an undisclosed formula.

Any attendance policy that disregards excessive absences when there are extenuating circumstances without publicly defining those circumstances allows too much room for school officials to arbitrarily punish a student and is, therefore, unreasonable.

## IV

In closing, we reiterate that the choice between competing attendance policies is generally committed to the sound discretion of the boards of education, which are free to select a policy that provides incentives for good attendance, dispenses punitive, administrative consequences for bad attendance, such as detentions and suspensions, lowers grades when a predetermined number of absences is reached, or the like. If the Board of Education of the Maplewood Joint Vocational School District had selected one of those policies, we would likely have deferred to its judgment and would have no cause to intervene. By selecting an extreme policy that (1) denies academic credit for excessive absenteeism, (2) counts excused absences against the student when figuring the attendance rate, and (3) does not define extenuating circumstances, the board has overstepped the boundaries circumscribing the use of its discretionary authority.

The judgment of the trial court is reversed, and the cause is remanded with instructions for the lower court to issue a writ of mandamus compelling the respondents to release Jennifer Barno's grades, to afford her academic credit for

her senior year, to issue her a Career Passport for successfully completing the job-training program at Maplewood, and to issue her a high school diploma.

*Judgment reversed.*

WILLIAM M. O'NEILL and EDWARD J. MAHONEY, JJ., concur.

EDWARD J. MAHONEY, J., retired, of the Ninth Appellate District, sitting by assignment.