**SOUTH GIBSON SCHOOL BOARD,**
**Appellant–Defendant,**

v.

**Trent SOLLMAN, Donald Sollman, and Marilyn Sollman, Appellees–Plaintiffs.**

**No. 26A01–9906–CV–222.**

Court of Appeals of Indiana.

May 26, 2000.

J. Robert Kinkle, Hall, Partenheimer & Kinkle, Princeton, Indiana, Attorney for Appellant.

Julie M. Slavens, Indianapolis, Indiana, Attorney for Amicus Curiae Indiana School Boards Assocation.

Ray M. Druley, Fort Branch, Indiana, Attorney for Appellees.

## OPINION

MATTINGLY, Judge

The South Gibson School Board ("the Board") appeals an order issued by the trial court pursuant to judicial review of a decision to expel Trent Sollman ("Trent") from Gibson Southern High School.[1] We restate the issues on appeal as follows:

1. Whether Trent may be denied credit for coursework that he performed in the semester during which the conduct leading to his expulsion occurred; and

2. Whether the period of Trent's expulsion may include the time during which summer school occurs.

We affirm.[2]

### FACTS AND PROCEDURAL HISTORY

December 17, 1998 was three days before the end of Gibson Southern High School's first semester. On that day, two sheriff's deputies, accompanied by a "marijuana sniffing" dog, toured a parking lot at Gibson Southern High School. Trent's vehicle was parked in the lot and the dog "alerted" on it. Trent was retrieved from class and he unlocked the vehicle. In the vehicle's unlocked glove box was found a plastic bag containing a small amount[3] of marijuana.

Following these events, Gibson Southern High School's principal suspended Trent and requested that he be expelled. Trent's suspension began on December 17, 1998. Following his suspension, Trent did not complete any school assignments or examinations that remained to be completed in the first semester.

An expulsion examiner was appointed and an expulsion meeting held. On January 29, 1999, the expulsion examiner issued a report holding that Trent would be ex-

1. The Indiana School Boards Association has appeared as Amicus Curiae and has filed a brief in this cause.

2. Oral argument in this cause was held at the University of Southern Indiana in Evansville, Indiana on March 28, 2000.

3. The record does not clearly reveal how much marijuana was found in Trent's vehicle. The expulsion examiner's written summary of evidence characterizes the small amount of marijuana as a "hit." (R. at 43.) In the brief supporting Trent's petition for judicial review, it is stated that "[t]he marijuana was no more than one hit. This amounts to enough for one inhale. Therefore, basically what was found in Trent Sollman's truck was an empty bag with some marijuana crumbs in it." (R. at 67.)

pelled from Gibson Southern High School for (1) the remainder of the first semester, (2) the second semester, and (3) summer school. The expulsion examiner further determined that Trent would be allowed to reenter Gibson Southern High School when the fall semester of the 1999/2000 school year began.[4]

Trent appealed the decision of the expulsion examiner, requesting a hearing before the School Board. The School Board held a hearing and ultimately concluded that Trent's case should be returned to the expulsion examiner for further consideration. Subsequently, the expulsion examiner issued a revised report determining, once again, that Trent would be expelled until the fall semester of the 1999/2000 school year. Trent appealed this determination to the School Board, which upheld the examiner's expulsion determination.

On March 19, 1999, Trent, along with his parents Donald Sollman and Marilyn Sollman (collectively, "the Sollmans"), filed a petition for judicial review in which they claimed, among other things, that Trent's expulsion was in excess of statutory jurisdiction; that his expulsion was arbitrary and capricious as it extended beyond the end of the school year; and that the refusal to give him first semester credits was arbitrary and capricious. Their petition requested

that the Court enter an order prohibiting the School Board from extending the expulsion beyond the school year, that the Court order the School Board to permit Trent Sollman to attend summer school and participate in extracurricular activities during the summer, and that the Court further order the School Board to give Trent Sollman his grades and credits for the first semester....

(R. at 8.) A hearing on this petition was held and on May 21, 1999, the trial court issued an order that stated in part:

The Court ... now finds that the expulsion of Trent Sollman from Gibson Southern High School by the Expulsion Examiner and the South Gibson School Board was in violation of Indiana law and must not be allowed to stand. Specifically, the Court finds that although the South Gibson School Board had the authority to expel Trent for the 1998–99 school year, the expulsion extends beyond the 1998–99 school year in violation of Indiana Code 20–8.1–5.1–14. The Court further finds the Board acted in an arbitrary and capricious manner and abused its discretion in denying Trent credit for first semester courses for which he may have earned a passing grade in spite of the work assignments missed.

It should be noted that the Court has not determined that the School Board was without authority to expel Trent for the 1998–99 school year nor is it the decision of the Court that the expulsion was impermissibly excessive because Trent deserved a lesser punishment in view of the particular circumstances of his case. Instead, it is the decision of the Court that while the Board is authorized to expel a student for the remainder of the school year upon a violation of the zero tolerance drug policy, the Board is not authorized to extend the expulsion to include summer school nor may the Board deny a student credit for courses in which a passing grade is earned in spite of missed assignments and tests resulting from the expulsion.

. . . .

The South Gibson School Board expelled Trent pursuant to the uncompromising zero tolerance toward drugs policy, a policy clearly and openly explained

4. The expulsion examiner's determination reads as follows:

Sollman will not be allowed to complete the first semester, the second semester, nor summer school of the 1998—99 school

year. He will be allowed to enter GSHS again for the fall semester of the 1999–2000 school year.

(R. at 30.)

to all the students at Gibson Southern High School, including Trent. While the Board was authorized to expel Trent through the end of the current school year, the Board exceeded its statutory authority by extending the expulsion to include summer school. The Board acted in an arbitrary and capricious manner and abused its discretion when it summarily denied Trent credit for first semester courses without regard to whether Trent had earned passing grades for those classes after factoring zeros for all assignments and tests missed as a result of the suspension.

. . . .

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that the expulsion of Trent Sollman shall end on May 28, 1999.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the South Gibson School Corporation award to Trent Sollman credit for courses in the first semester of the 1998–1999 school year in which it is determined Trent Sollman earned a passing grade for the courses after the assessment of zeros for all worked [sic] missed as a result of the suspension.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the expulsion of Trent Sollman by Gibson Southern is in other respects upheld.

(R. at 117–18, 126.) The Board now appeals.

## STANDARD OF REVIEW

■ On review of an administrative body's decision, we will not substitute our opinions and conclusions for those of the administrative body. *M & M Bus Co., Inc. v. Muncie Community Sch. Corp.,* 627 N.E.2d 862, 864 (Ind.Ct.App.1994). Rather, we give deference to the administrative body's expertise. *Id.* Our duty, like that of

the trial court, is to review the proceedings in question. *Id.* Judicial review of an administrative decision is limited, and the decision should be reversed only when it is (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) contrary to a constitutional right, power, privilege, or immunity; (3) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; (4) without observance of procedure required by law; or (5) unsupported by substantial evidence. *Indiana Dep't of Envtl. Management v. Adapto, Inc.,* 717 N.E.2d 646, 649 (Ind.Ct.App.1999). An arbitrary and capricious administrative act is one that is willful and unreasonable, without consideration and in disregard of the facts or circumstances of the case. *Board of Sch. Trustees of the Muncie Community Schs. v. Barnell,* 678 N.E.2d 799, 805 (Ind. Ct.App.1997).

## DISCUSSION AND DECISION[5]

### 1. *Denial of Credit for First Semester Coursework*

■ Trent was suspended three days before the end of the first semester. Following that suspension, he did not complete any school assignments or examinations that remained to be completed in the first semester. The Board denied Trent credit for all the coursework he performed in that first semester. We find, as did the trial court, that the Board's denial of credit was arbitrary and capricious.

■ Without question, loss of credit is often a consequence of expulsion from high school. Where a student is expelled for an entire semester and is thus precluded from performing any coursework, loss of credit for that semester is virtually assured. Moreover, a student who is expelled after attending only a few days of school in a given semester generally cannot expect to

---

**5.** The Sollmans unsuccessfully argued to the trial court that Trent's expulsion "should be reversed as being excessive under the facts and circumstances of this case." (R. at 68.)

As the Sollmans did not raise this issue on appeal, we will not address the excessiveness of the punishment of expulsion given the facts and circumstances of the case.

have completed an amount of coursework sufficient to merit an award of credit. In each of these scenarios, the student is unable to receive credit because his expulsion has caused him to be separated from school attendance for a period so lengthy that he could not have completed enough work to pass his courses. *Cf. Commons v. Westlake City Schs. Bd. of Educ.*, 109 Ohio App.3d 706, 672 N.E.2d 1098, 1103 (1996) ("[I]n this case, the penalty imposed on Michael Commons consists of expulsion— 'total removal from the educational environment'—and any grade reduction or denial of credit is merely a consequence of his extended absence from school.... [W]hen a student is removed from the educational environment because of a behavioral problem, his academics necessarily suffer.").

▮ This case, however, presents a situation in which it is far from clear that the student's separation from school attendance lasted long enough to result in forfeiture of credit. Indeed, Trent was ejected from school three days before the end of the first semester, and the record indicates that he might have been in a position to pass his first semester courses even if he were awarded "zeros" for first semester assignments occurring after his ejection. Under these circumstances, we discern no reasonable basis for requiring that Trent forfeit all first semester credit merely because he was expelled during that semester. Such a loss of credit would be reasonable only under circumstances where expulsion causes the student to miss so much coursework that an award of credit would be impossible. But here the period of first semester expulsion was short, and Trent's investment of time and effort in first semester coursework may not have been so insubstantial as to make him ineligible for credit. Thus the trial court reasonably determined that:

> Trent must receive zeros for all assignments and tests missed as a result of his suspension on December 17, 1998. However, should Trent have a passing grade for a course in spite of the zeros, he is entitled to credit for that course. Each teacher must calculate the grade earned by Trent factoring in zeros for the assignments missed as a result of the suspension.

(R. at 125.) We approve of this determination and find that the Board acted arbitrarily and capriciously by summarily denying Trent first semester credit.

The Board has urged that the denial of credit was not arbitrary and capricious. Specifically, the Board takes the position that when a student is expelled from school, the student should lose credit for coursework performed during the semester in which he was expelled. In support of its position, the Board advances various arguments that we discuss below.

### a. *Statutory Authority*

▮ According to the Board, "the act of expulsion is itself a denial of credit and the Indiana Legislature has authorized such action." (Br. of Appellant at 12.) The Board points to Ind.Code § 20–8.1–1–10, which states in part:

> (a) As used in this article, the term "expulsion" means a disciplinary or other action whereby a student:
>
> . . . .
>
> (2) is separated from school attendance for the balance of the current semester or current year unless a student is permitted to complete required examinations in order to receive credit for courses taken in the current semester or current year....

▮ The interpretation of a statute is a question of law reserved for the courts. *Becker v. Four Points Inv. Corp.*, 708 N.E.2d 29, 31 (Ind.Ct.App.1999), *trans. denied.* Statutes are to be interpreted as a whole. *Nishikawa Standard Co. v. Van Phan*, 703 N.E.2d 1058, 1060 (Ind.Ct.App. 1998). The cardinal rule of statutory construction is to ascertain the intent of the drafter by giving effect to the plain and ordinary meaning of the language used.

*T.W. Thom Constr., Inc. v. City of Jeffersonville,* 721 N.E.2d 319, 324 (Ind.Ct.App. 1999).

The Board asserts that Ind.Code § 20–8.1–1–10(a)(2) "mandates the conclusion that if a student is expelled for the remainder of the current semester then the student does not receive credit for the courses taken in the current semester." (Br. of Appellant at 10.) The Board concludes that Trent must be denied credit for work he has completed. We find, however, that the Board's interpretation of Ind. Code § 20–8.1–1–10(a)(2) is not in accord with that statute's plain language. Although Ind.Code § 20–8.1–1–10(a)(2) could have been more clearly drafted, it must be understood to mean that expulsion occurs when a student is not allowed to attend school for the remaining semester or year, and that, notwithstanding the expulsion, the student may be allowed to complete examinations and receive course credit. We cannot accept the Board's contrary interpretation, as the statute contains no language indicating that an expelled student may be denied credit for completed work. We accordingly find that the statute does not support the Board's decision to deny Trent first semester credit.

### b. *Indiana Precedent*

In further support of its argument that Trent should lose credit for first semester coursework he performed, the Board cites *Bremen Public Schools v. Varab,* 496 N.E.2d 125 (Ind.Ct.App.1986). In *Varab,* students were accused, in February of 1985, of smoking or possessing marijuana while in school. The students were expelled for the remainder of the regular 1984–85 academic school year. On March 20, 1985, the students sought and were granted a temporary restraining order. The order permitted the students to remain in school pending a hearing on their preliminary injunction motion. The students meanwhile appealed their expulsion to the trial court. In May of 1985, the trial court issued a preliminary injunction which restrained the school corporation from enforcing the expulsion order, and which required that the students be temporarily reinstated. Subsequently, the students' appeal was submitted to the trial court, which determined that the action was moot upon finding that the students should have graduated and received their diplomas in June of 1985. The action was dismissed on August 6, 1985, and the school corporation appealed the trial court's decision.

In *Varab,* the issue before this court was whether it was error to dismiss the cause as moot. We affirmed insofar as the students' claim for injunction was dismissed as moot, finding that the "portion of [the students'] claim seeking injunctive relief became moot after the completion of the term." *Id.* at 127.

However, we reversed the dismissal of the students' appeal from the expulsion order. In reversing, we observed that "[t]he injunction permitted [the students] to continue attending class to preserve the status quo and avoid substantial injury should it be determined that the expulsions were improper." *Id.* Our analysis continued as follows:

What is the effect, however, if the expulsion is ultimately determined to have been proper? As persons permitted to attend class under court order but having the status of an expelled student, would the students be entitled to credit for the classes thus attended? Would they be entitled to graduate? Did they, in fact, graduate? The record is silent upon all these matters....

The state of their academic records, the school requirements for graduation and the facts pertaining to their graduation were not before the court when it determined mootness. No legal argument has been presented or considered as [to] whether students attending class in an expelled status are entitled to credits for those classes and/or diplomas dependent upon the successful completion of those classes.

If the students' rights to credits and/or diplomas remain dependent upon whether they were properly expelled, then the appeal from their expulsion is not moot. Clearly, upon the present state of the record, the appeal is not shown to be moot.

*Id.*

Discussing *Varab,* the Board asserts that "[t]he reason the case was not moot was that if there was in fact an expulsion and it was upheld then the students would not have received credit even though they completed the school year and took the exams." (Br. of Appellant at 10.) According to Amicus Curiae, "[*Varab* ] stands for the proposition that expulsion means a loss of credit for courses taken during the semester the misconduct occurred regardless of when the misconduct occurred during the semester." (Br. of the Amicus Curiae at 9.) We note, however, that in *Varab* we were not squarely faced with the issue of whether a student upon expulsion may be denied credit for work he has already completed. Nor are we willing to speculate as to how we would have resolved that issue under the facts of that case. As a result, we cannot agree with the characterizations of *Varab* that the Board and Amicus Curiae offer us. *Varab* provides no basis for denying Trent first semester credit.

### c. *Public Policy*

The Board also suggests that it is in the interest of sound policy for a loss of credit to result from expulsion. It would appear to be the Board's position that if expulsion does not result in loss of credit and if a student may receive credit under circumstances identical to those under which Trent was expelled, then a student's level of academic success could alone determine the kind of discipline the student receives. According to the Board:

If you had a strong student, he or she may very well not only receive their credits, but make a reasonably good grade in a course. If you had a poor student, the chances are very likely that the student would either get a very poor grade or would receive an F in the class.

(Br. of Appellant at 10–11.) The Board also seems to indicate that, if the trial court's decision is allowed to stand, then the kind of discipline received by a student could turn merely on when the student's offense occurred:

Students who commit offenses early in the semester and who would be given credit for the work they completed prior to the act giving rise to the expulsion, have an extremely less likely chance to pass their courses. Yet students who do not commit an offense for which expulsion is appropriate until the end of the semester, have a much more likely possibility of receiving passing grades and therefore, credit in their courses.

(Br. of Appellant at 12.) The Board claims that these outcomes are unfair. The Board further seems to indicate that certain purposes of school discipline—i.e., deterrence of both the offending student and non-offending students—are not served by making the time of the student's offense determinative of the sort of discipline the student will receive.

We find this argument compelling but unpersuasive under the facts of this case. It is clear that the threat of expulsion looms large as a deterrent at every stage of the school year and for every type of student. For students expelled at the beginning of a semester, expulsion is a deterrent because there is little hope that they will receive credit for that semester regardless of their academic prowess unless they are otherwise permitted to complete their work. At the end of the semester, expulsion clearly remains a deterrent for all students regardless of their academic abilities. This case strikingly illustrates the threat that expulsion poses in a semester's final stages, for Trent was expelled three days before the end of the first semester, and the record reveals that even at this late stage of the semester the expulsion caused his grades to suffer.

Thus, the threat of expulsion is the deterrent and the act of expulsion is the punishment. But to further punish the student by stripping him of credit for work performed while in good standing at the school is simply wrong. After all, the goal of our schools is to educate our children. When students with disciplinary problems interrupt this goal, appropriate action must be taken to maintain order in the school, including expulsion if appropriate. However, expelled students may be excluded from education in many of our communities.[6] For those students to be denied credit where credit is due runs contrary to the purpose of an educational institution, and such a denial under the circumstances of this case is arbitrary and capricious.

### d. *Expertise/Authority of School Officials*

■ The Board correctly observes that, in matters of school discipline, this court has been reluctant to substitute its judgment for that of trained school officials. *See, e.g., Barnell,* 678 N.E.2d at 805; *Forrest v. School City of Hobart,* 498 N.E.2d 14, 19 (Ind.Ct.App.1986). Moreover, the Board and Amicus Curiae direct us to statutes that remind us of the broad powers that school officials possess in disciplinary matters.[7] We are mindful that it is not our role to question professional expertise or to undermine school officials' legitimate exercise of statutory authority. However, it is our duty to determine whether such expertise and authority are employed arbitrarily and capriciously. By upholding the trial court's action in this case, we merely acknowledge the reasonable limits within which official expertise and authority must exist.

### 2. *Inclusion of Summer School in the Expulsion Period*

#### a. *Statutory Authority*

■ Trent was expelled for (1) the remainder of the first semester, (2) the second semester, and (3) summer school. The second semester ended on May 28, 1999. Summer school began approximately one week later. Summer school ended on approximately July 15, 1999. The trial court ruled that Trent's expulsion would end on May 28, 1999. The parties' arguments as to whether this ruling is correct center largely on how the following statutes should be interpreted.

> Except as provided in section 10 of this chapter, a student may not be expelled for a longer period than the remainder of the school year in which the expulsion took effect if the misconduct occurs during the first semester. Whenever a student is expelled during the second semester, the expulsion remains in effect for summer school and may remain in effect for the first semester of the following school year, unless otherwise modified or terminated by order of the governing body. The appropriate authorities may require that a student who is at least sixteen (16) years of age and who wishes to reenroll after an expulsion or an exclusion attend an alternative program.

Ind.Code § 20–8.1–5.1–14(a).

> A school year is the period of time beginning after June 30 of each year and ending before July 1 of the following

---

**6.** At oral argument, counsel for the Sollmans indicated that there was no other school in the area that could take Trent as a student.

**7.** See Ind.Code § 20–8.1–5.1–3(b), which states in part that "school corporation personnel have the right, subject to this chapter, to take any disciplinary action necessary to promote student conduct that conforms with an orderly and effective educational system." See also Ind.Code § 20–5–1.5–4, which states:

> A school corporation may exercise any power it has to the extent that the power:
> (1) is not expressly denied by the Constitution of the State of Indiana, by statute, or by rule of the state board of education; and
> (2) is not expressly granted to another entity.

year, except when a different period is specified for a particular purpose.

Ind.Code § 20–10.1–2–1(a).

We begin our analysis by observing that the plain language of Ind.Code § 20–10.1–2–1(a) clearly designates a date prior to July 1 as the end of a school year. Thus the school year could not have terminated at the end of summer school, which was the middle of July 1999, but rather must have terminated before July 1, 1999. Accordingly, Trent's expulsion was required to end on a date prior to July 1, 1999.

Nor would it have been proper to expel Trent for any period of summer school that might have occurred prior to July 1, 1999. In this regard we note that, under Ind.Code § 20–8.1–5.1–14(a), where the offense occurs during the second semester, summer school is expressly included as part of the permitted expulsion. The General Assembly thus knew how to clearly express its intention that a period of expulsion included summer school. However, summer school is not expressly mentioned in the sentence dealing with first semester offenses. As a result, we must conclude that had the General Assembly intended to include summer school within the permissible period of expulsion for first semester offenses, it would have done so as it did in the case of second semester offenses. We accordingly hold that the General Assembly did not intend to include summer school within the period of expulsion which may be imposed for conduct occurring in the first semester.

Having considered both statutes in relation to one another, and mindful of the rules of statutory interpretation noted above, see *Nishikawa Standard Co.*, 703 N.E.2d at 1060; *T.W. Thom Constr., Inc.*, 721 N.E.2d at 324, we find no error in the trial court ruling that Trent's expulsion must end on May 28, 1999, the end of the second semester.

b. *Summer School Credit*

As a final matter, we address an argument on appeal that stems from what is claimed to have occurred since the trial court's order of May 21, 1999. Specifically, the Sollmans claim that Trent, pursuant to the trial court's order, attended summer school. (*See* Br. of Appellees at 9–10.) The Board appears to accept this claim as accurate. (*See* Reply Br. of Appellant at 5.) The Sollmans go on to argue that Trent should not be denied credits for summer school. In support of their argument, the Sollmans state that there are no policy reasons for denying Trent such credits. They further support their argument with an apparent suggestion that the issue of summer school expulsion has become moot as a result of Trent's alleged summer school attendance.

The Sollmans' argument does not clearly indicate whether Trent already has been awarded credit for summer school. Nor does the record appear to shed light on this matter. In our view, however, whether Trent should receive summer school credit need not be resolved by resorting to an analysis of policy or mootness. In light of our holding that the period of Trent's expulsion may not include summer school, it seems clear that Trent is entitled to credit insofar as he may have attended summer school and successfully completed coursework offered at that time.

## CONCLUSION

Trent may not be denied credit for coursework that he performed in the semester during which the conduct leading to his expulsion occurred. Nor may the period of Trent's expulsion include the time during which summer school occurs. Accordingly, we affirm the trial court.

Affirmed.

BAKER, J., and BAILEY, J., concur.