**LAKE CENTRAL SCHOOL CORP.,** Board of Trustees, John Devries, Nancy Gray, Howard Marshall, Debra Phelps, Margaret Clark, Dr. Janet Emerick, Dr. Nikki Tsangaris, and Scott Graber, Appellants–Defendants,

v.

Anthony **SCARTOZZI,** Rick Scartozzi and Linda Scartozzi, Appellees–Plaintiffs.

No. 45A04–0105–CV–227.

Court of Appeals of Indiana.

Dec. 27, 2001.

Michael D. Sears, Jason M. Massaro, Cheryl A. Froehlich, Munster, Indiana, Attorneys for Appellant.

Robert L. Meinzer, Jr., St. John, Indiana, Attorney for Appellees.

## OPINION

RATLIFF, Senior Judge.

### STATEMENT OF THE CASE

Defendants–Appellants Lake Central School Corporation (Lake Central), Board of Trustees, John Devries, Nancy Gray, Howard Marshall, Debra Phelps, Margaret Clark, Dr. Janet Emerick, Dr. Nikki Tsangaris, and Scott Graber (Appellants) appeal the decision of the trial court in favor of Plaintiffs–Appellees Anthony Scartozzi (Anthony), Rick Scartozzi, and Linda Scartozzi (collectively "Scartozzis").

We reverse.

### ISSUE

Appellants present one issue for our review which we restate as: whether the trial court erred in determining that Appellants' expulsion meeting procedure, insofar as the procedure prohibits the participation of legal counsel, violates a student's right to due process under Article 1, Section 12 of the Indiana Constitution.

## FACTS AND PROCEDURAL HISTORY

Lake Central sought to expel Anthony Scartozzi, a middle school student. Prior to his expulsion, Anthony and his parents were notified that the school was seeking his expulsion, the school's reasons for seeking Anthony's expulsion, and the Scartozzis' right to request an expulsion meeting. The Scartozzis appeared for the expulsion meeting with their attorney and were informed by the expulsion examiner that, pursuant to the school's expulsion meeting procedure, their attorney would not be allowed to participate in the meeting but that he could remain outside the meeting room for consultation with the Scartozzis during the course of the meeting. The Scartozzis' attorney objected to this procedure. Following the expulsion meeting, the expulsion examiner expelled Anthony, and the Scartozzis appealed this decision to the Board of Trustees. At the hearing before the Board of Trustees, the Scartozzis were represented by counsel who renewed his objection to Lake Central's expulsion meeting procedure. The Board of Trustees upheld the decision of the expulsion examiner with the exception that Anthony be allowed to take his final examinations. The Scartozzis subsequently filed a complaint against the school corporation, the board of trustees, and individual board members claiming that Lake Central's expulsion meeting procedure violates the students' constitutional rights and requesting injunctive relief. The trial court found that Lake Central's procedure violates the due course of law provision of the Indiana Constitution and ordered that Anthony be given a new expulsion meeting at which he could be represented by legal counsel. This appeal ensued.

## DISCUSSION AND DECISION

The Scartozzis assert that Lake Central's expulsion meeting procedure, insofar as the procedure prohibits the participation of legal counsel, does not comport with the requirements of due process in violation of the due course of law clause of Article 1, Section 12 of the Indiana Constitution.

First, we note that our state constitution specifically recognizes the importance of knowledge and learning and so mandates a statewide system of free public education. IN CONST. art. 8, § 1. Further, we have established that a student's interest in pursuing an education is included within the protection of Article 1, Section 12 of our state constitution and that a student facing expulsion or suspension from a public educational institution is therefore entitled to the protections of due process contained therein. *See Reilly v. Daly*, 666 N.E.2d 439, 444 (Ind.Ct.App.1996), *trans. denied; see also Indiana High School Athletic Ass'n., Inc. v. Carlberg by Carlberg*, 694 N.E.2d 222, 241 (Ind.1997).

This appears to be a case of first impression in the courts of our state. As such, it causes us to search the cases of other jurisdictions, as well as the federal courts in our jurisdiction, in order to determine the most rational analysis of the issue. In doing so, we reviewed the Seventh Circuit's decision in *Osteen v. Henley, et al*, 13 F.3d 221 (7th Cir.1993).[1] Osteen was a state university student who broke the noses of two other students during an altercation one evening outside a bar. A hearing was held regarding Osteen's expulsion in which his lawyer was not allowed to participate. In his lawsuit in the

---

1. Although *Osteen* involved a university rather than a middle or high school student, the holding in that case does not appear to be limited to the university context, and, as such, is presumably applicable to any expulsion hearing of a public school student without regard to his or her particular grade-level.

federal courts and his subsequent appeal to the Seventh Circuit, Osteen claimed a violation of his right to counsel in student disciplinary proceedings derived from the due process clause of the Fourteenth Amendment. Chief Judge Posner, writing for himself, Judge Manion and Judge Foreman, determined that the federal constitution does not confer a right to counsel upon Osteen in this situation and added that they doubt that the federal constitution confers a right to counsel upon a student in any student disciplinary proceeding. *Osteen*, 13 F.3d at 226. This is true even though, as the panel notes in its opinion, Osteen was charged criminally as a result of this incident. The judges concluded that Osteen had no greater right than to *consult* counsel and that he was not denied this right. *But see Black Coalition v. Portland School District No. 1*, 484 F.2d 1040 (9th Cir.1973) (holding that a student has a right to counsel in student disciplinary proceedings).[2]

Though the Due Course of Law Clause "provides none of the protections of its federal counterpart" in criminal proceedings,[3] its application in civil proceedings is patterned after the analysis of the federal Due Process Clause.[4] Thus, we have adopted federal due process analysis for Indiana Due Course of Law questions in civil proceedings. However, one is hard pressed to say that the text of the Due Course of Law Clause governs state agency adjudicatory proceedings. Rather, the text of the Due Course of Law Clause refers to formal court proceedings:

*All courts shall be open;* and every person, for injury done to him in his person, property, or reputation, shall have remedy by due course of law. Justice shall be administered freely, and without purchase; completely, and without denial; speedily, and without delay.

Ind. Const. art. I, § 12 (emphasis supplied).

■ While Osteen's claim was based on the Fourteenth Amendment to the United States Constitution, Article 1, Section 12 of the Indiana Constitution has been construed by the courts of our state as analogous to the federal due process clause. *Reilly*, 666 N.E.2d at 444. Therefore, cases interpreting the federal constitution provision are useful in interpreting our state constitution, *Lake of the Woods v. Ralston*, 748 N.E.2d 396, 404 (Ind.Ct.App. 2001), *trans. denied.* In fact, our supreme court in *Carlberg* remarked that the analysis of claims under the Due Process Clause and the Due Course of Law Clause was the same. 694 N.E.2d at 241.[5] The test

---

**2.** The court in *Osteen* addresses the holding in *Black Coalition v. Portland School District No. 1* by saying that it is an "oldish case" by constitutional law standards and that the newer cases hold that there is no right to counsel in student disciplinary proceedings. *See Osteen*, 13 F.3d at 225.

**3.** *Sanchez v. State*, 749 N.E.2d 509, 514 (Ind. 2001).

**4.** *Carlberg*, 694 N.E.2d at 241 ("The Due Process Clause and the Due Course of Law Clause prohibit state action which deprives a person of life, liberty, or property without the 'process' or 'course of law' that is due, that is, a fair proceeding. The same analysis is applicable to both the federal and state claims.")

(citations omitted); *Shook Heavy & Envtl. Constr. Group v. City of Kokomo*, 632 N.E.2d 355, 361 (Ind.1994) ("Our court has regularly applied the principles cited by Judge Robertson in federal constitutional 'due process' claims asserted in our court.... Because these are familiar principles in Indiana jurisprudence, we have no difficulty in explicitly extending them to article I, section 12, of our constitution.") (citations omitted).

**5.** Although our supreme court has cautioned against broad generalizations in all situations regarding the similarities of the protection afforded by and the analysis of claims brought under the Due Process Clause of the United States Constitution (Fourteenth Amendment)

for determining how much process is due the public school student in disciplinary proceedings was set forth by the Supreme Court in *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976) and has been applied in numerous student disciplinary cases, including *Osteen.* The test requires consideration of three factors: (1) the cost of the additional procedure sought; (2) the risk of error if it is withheld; and (3) the consequences of error to the person seeking the procedure. *Osteen,* 13 F.3d at 226.

*Mathews* answered whether a social security recipient was entitled to certain procedural protections before termination of benefits. 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). After setting forth the three factors courts should consider in deciding whether an administrative procedure violated "procedural" due process, the U.S. Supreme Court held that the recipient was not entitled to an evidentiary hearing before termination of the recipient's benefits. *Id.* at 334–35, 349, 96 S.Ct. 893. The Seventh Circuit's balancing of these factors in *Osteen* is sound, and the same questions of utility are present in this case. In the end, having attorneys fully participate in expulsion meetings is not worth the cost of the marginal benefit. Moreover, whether there is any marginal benefit is questionable.

We turn now to our analysis of the three factors as they relate to the case at bar. First, the fiscal burden on the school administration outweighs the benefit of allowing counsel at the expulsion hearings. As was noted in *Newsome v. Batavia Local School District,* 842 F.2d 920, 925–26 (6th Cir.1988), school boards and administrators are charged with a variety of responsibilities that are critical to the effective operation of our public schools. These include, but most definitely are not limited to, meting out punishment for violations of school rules, hiring and firing of teachers and other school personnel, planning curricula, meeting the dietary and health needs of the student population, supplying and maintaining school buildings, and providing extra-curricular activities. *Id.* Moreover, the school systems carry out these duties within the strict confines of an increasingly tighter budget. *Id.* Furthermore, to saddle school boards and administrators with the burden of overseeing a quasi-judicial proceeding is to require of them that which they are ill-equipped to perform. *Id.* "The detriment that will accrue to the educational process in general by diverting school board members' and school administrators' attention from their primary responsibilities in overseeing the educational process to learning and applying the common law rules of evidence simply outweighs the marginal benefit that will accrue to the fact-finding process by allowing [students' attorneys to participate in expulsion meetings]." *Id.* Additionally, we realize that in many, if not all, school disciplinary cases, the school is represented by one of the school administrators. If it is determined that due process requires that students be represented by an attorney in expulsion meetings, it logically follows that school systems will be forced to pay legal counsel for representation at the meetings, as well.

Thus, having attorneys fully participate in such meetings would end in the partial (or perhaps full) abdication of student discipline to lawyers. One can easily imagine a school system retaining lawyers and in-

and the Due Course of Law provision of the Indiana Constitution (Article 1, Section 12), we believe the rights provided for and the analysis used with regard to the state constitution in the present case are analogous to the federal constitution. *See Sanchez,* 749 N.E.2d 509.

stituting quasi-judicialized procedures to meet the demands and objections of the student's advocate at expulsion meetings. As Aman and Mayton keenly observe: "When due process converts agency processes into trial-type processes, decisional responsibility tends to shift toward those competent in those processes (lawyers) and to move away from those competent with respect to substance [in this case, teachers and school administrators]." Alfred C. Aman, Jr., & William T. Mayton, *Administrative Law* 180 (1992).

The second factor concerns the risk of error if counsel is not permitted to attend the expulsion meeting. Lake Central's current procedure for expulsion meetings precludes the student's attorney from attending the meeting with the student. The student may, as Anthony did, consult with an attorney prior to the meeting. In fact, Anthony's attorney was allowed to sit outside the meeting room for consultation with Anthony and/or his parents during the course of the meeting. Moreover, Anthony had the right to appeal the expulsion examiner's decision, which he did. *See* Ind.Code § 20–8.1–5.1–13.

This Court has stated that due course of law involves a fair proceeding in which the fundamental requirements of due process are notice and an opportunity for hearing appropriate to the nature of the case. *Reilly*, 666 N.E.2d at 444; *Carlberg*, 694 N.E.2d at 241. By "fair proceeding" we mean that the person adversely affected is afforded the opportunity to respond, explain, and defend. *Reilly*, 666 N.E.2d at 444. However, this Court has cautioned that due process does not guarantee any particular form of procedure; rather it is only intended to protect substantial rights. *Id.* To this end, courts have generally refused to require the traditional formalities of legal proceedings in school suspension and dismissal hearings.

*Id.* By recognizing such a right of students to have a lawyer present who is permitted to examine or cross-examine witnesses, to submit and object to documents, to address the tribunal, and otherwise to perform the traditional function of a trial lawyer would force student disciplinary proceedings into the mold of adversary litigation with its formal rules and procedures. *Osteen*, 13 F.3d at 225. However, when a student appears without counsel, as Anthony did here, the student, administrators and other participants of the expulsion meeting can concentrate on the student and the issues at hand without the focus being shifted to the attorneys and their legal maneuvering. As a result, the proceeding is less adversarial and less formal. As a panel of this court explained in *Reilly*:

> To further escalate the formality and adversity of the suspension process may not only make it too costly as a regular disciplinary tool but also destroy its effectiveness as a part of the teaching process. Due process thus requires not an elaborate hearing before a neutral party, but simply an informal give-and-take between student and disciplinarian which gives the student an opportunity to explain his version of the facts.

666 N.E.2d at 444 (internal citations omitted). Thus, we believe the risk of error to be slight in an informal give-and-take setting where the student is given a chance to explain and defend his or her actions, particularly when balanced against the cost to the school system of a more formal, quasi-judicial approach.

Finally, we look to the consequences of error to the person seeking the procedure. We do not believe the consequence for Anthony—a two-semester, non-permanent expulsion—entitles him to the procedural protections during the expulsion meeting thought necessary in litigation. Addition-

ally, we note the possibility that Anthony could attend another school during the period of suspension from Lake Central. Further, we reiterate that although Lake Central does not permit attorneys to be present for the expulsion meeting, students such as Anthony do have the right to appeal the school's decision and be represented by counsel at such appeal hearing.

## CONCLUSION

Thus, when we consider all the factors bearing on the claim of students to a right to counsel at expulsion meetings, we conclude that the Indiana Constitution does not confer such a right. Therefore, Lake Central's expulsion meeting procedure prohibiting the participation of a student's legal counsel does not violate a student's right to due process under Article 1, Section 12 of the Indiana Constitution.

Reversed.

BAKER, J., and NAJAM, J., concur.