SOUTH GIBSON SCHOOL BOARD,
Appellant–Defendant,

v.

Trent SOLLMAN, Donald Sollman and
Marilyn Sollman, Appellees–
Plaintiffs.

No. 26S01–0009–CV–530.

Supreme Court of Indiana.

May 24, 2002.

---

J. Robert Kinkle, Hall, Partenheimer & Kinkle, Princeton, IN, Attorney for Appellant.

Ray M. Druley, Fort Branch, IN, Attorney for Appellees.

Julie M. Slavens, Indianapolis, IN, Attorney for Amicus Curiae Indiana School Boards Association.

David R. Day, Johnson, Smith, Pence & Heath LLP, Indianapolis, IN, Attorney for Amicus Curiae Indiana Association of Public School Superintendents and Indiana Association of School Principals.

## ON PETITION TO TRANSFER

RUCKER, Justice.

### Case Summary

Gibson Southern High School has a zero-tolerance drug policy. In essence, any student found in possession of drugs is expelled from school. When a small amount of marijuana was found in the truck of junior student Trent Sollman with only three days left in the fall semester, he was not only expelled from school for the balance of the year, but also he was denied credit for all course work previously completed that semester. On review, the trial court determined that the policy of summarily denying credit to a student suspended and later expelled without regard to whether the student had completed sufficient course work to earn a passing grade prior to the suspension was arbitrary, capricious, and an abuse of discretion. The

Court of Appeals agreed. *South Gibson Sch. Bd. v. Sollman*, 728 N.E.2d 909, 914 (Ind.Ct.App.2000). Concluding that insufficient deference was given to the school's disciplinary decision, we grant transfer and reverse in part the judgment of the trial court.

### Facts and Procedural History

Student discipline rules for the South Gibson School Corporation proscribe certain conduct including the possession of marijuana.[1] For several years there has been in place a zero-tolerance policy concerning drugs, the application of which results in the "maximum expulsion" allowed by law. R. at 202. The policy has been consistently applied at Gibson Southern High School as well as other schools in the South Gibson School Corporation. According to the school superintendent, after reviewing case files he found that for the twenty-year history that he has served as superintendent, "[w]hen drugs were the offense, the recommendation from the high school principal was expulsion and in each and every case it was expulsion." R. at 199.

Although the exact date is not clear, the record shows that Sollman attended a general assembly at the school that included grades nine through twelve. R. at 162. Teachers were there; the Gibson County Prosecutor was present as well as members of the Gibson County Sheriff's Department. Drug-sniffing dogs were brought in, and there was a demonstration of how the dogs could indeed locate hidden marijuana. Underscoring the school's zero-tolerance policy, the superintendent advised the students "[i]f we find it on your person, in your locker, or in your vehicle, then we are going to we will consider that you will be in possession and it will be dealt with [as] an expulsion." R. at 162.

On December 17, 1998, a drug-sniffing dog found a small amount of marijuana in Sollman's truck that was parked in a lot on Gibson Southern High School property. There were three days left in the fall semester. The Gibson Southern principal suspended Sollman effective immediately. He also recommended to the superintendent that Sollman be expelled and that an expulsion examiner[2] be appointed to conduct the necessary expulsion proceedings. An expulsion examiner was appointed accordingly, and he convened a meeting at which Sollman, his parents, and legal coun-

---

1. The full text of the rules is not a part of the record. However, the record does reveal that Sollman was officially charged with violation of "SGSC Policy Section VI–F–3–a–(1)(2)(10)(11)(13)(14)(16)." R. at 19. According to Amicus Indiana School Boards Association, the text of the relevant rules is:

    (10) Knowingly possessing, using, transmitting, or being under the influence of any Controlled Substance as defined by Indiana Statutes, including, but not limited to, a narcotic drug, hallucinogenic drug, amphetamine, barbiturate, or marijuana; an alcoholic beverage; or intoxicant of any kind; (a) on the school grounds during and immediately before or immediately after school hours; (b) on the school grounds at any time when the school is being used by any school group; or (c) off the school grounds at a school activity, function, or event.
    (11) Violation of any criminal law.
    . . .
    (13) Engaging in any activity forbidden by the laws of the State of Indiana which constitutes an interference with school purposes.
    (14) Failing to comply with tobacco restrictions.
    Brief of the Amicus Curiae to the Court of Appeals, Indiana School Boards Association at 4. The parties to this appeal do not contest Amicus' representation.

2. *See* Ind.Code § 20–8.1–5.1–13(a) (authorizing school superintendent to conduct an expulsion meeting or appoint a third party to conduct the meeting).

sel were present. After evidence was presented and arguments heard, the examiner issued a written summary of the evidence. He concluded by expelling Sollman from school. Specifically, the expulsion examiner determined "Trent Sollman will not be allowed to complete the first semester, the second semester, nor summer school of the 1998–99 school year. He will be allowed to enter GSHS again for the fall semester of the 1999–2000 school year." R. at 39.

Sollman appealed to the South Gibson School Board. After a hearing, the School Board returned the matter to the expulsion examiner for further proceedings.[3] Subsequently, the expulsion examiner issued a revised report again determining that Sollman would be expelled until the fall semester of the 1999–2000 school year. This determination also was appealed to the School Board, which upheld the examiner's determination. On March 19, 1999, Sollman along with his parents filed a petition for judicial review. By that time, grades for the fall semester of 1998 had been posted, and Sollman received no grades or credits for the period. As a result, the petition for review not only challenged the expulsion but also the denial of grades and credits.

After conducting a hearing, the trial court determined that the ordered expulsion must end on the last day of the spring semester and could not extend through the summer session. As for the denial of grades and credits, finding the School Board's action arbitrary and capricious, the trial court ordered that Sollman was to be given zeros for all fall semester course work that he missed after the expulsion but was then to be given credit for those

courses in which he had a passing grade after taking the zeros into account. The School Board appealed, and the Court of Appeals affirmed. Having previously granted transfer, we now affirm in part and reverse in part the judgment of the trial court.

### Discussion

■ The Court of Appeals agreed with the trial court that Sollman could not be expelled beyond the last day of the spring semester. According to the Court of Appeals, the statute defining "school year," Indiana Code section 20–10.1–2–1(a), and the statute limiting the expulsion period for misconduct in the fall semester to the "remainder of the school year," Indiana Code section 20–8.1–5.1–14(a), were not intended to include summer school within the period of expulsion that may be imposed for conduct occurring in the fall semester. *Sollman,* 728 N.E.2d at 918. We agree and summarily affirm the Court of Appeals' opinion on this issue. *See* Ind. Appellate Rule 58(A)(2). We disagree, however, that the School Board acted arbitrarily and capriciously in denying Sollman credit for the fall semester.

The record shows that before the trial court Sollman took the position that "[n]othing in the statute permits the school corporation to take away credits already earned. . . . Depriving Trent Sollman of his first semester credits is a clear violation of due process and clearly an arbitrary and capricious act." R. at 66. He cited no authority for the latter assertion. In agreeing that the school's policy of denying credit was indeed arbitrary and capricious, the trial court acknowledged that the "action taken against Trent was consistent

---

**3.** Specifically, in his factual recitation the expulsion examiner declared, "Whether Trent knew the marijuana was there or not, he still is responsible for the contents of his vehicle. . . ." R. at 38. The School Board directed

that the matter should be returned to the examiner to determine whether the element of knowledge was proved, and if so, the facts the examiner relied upon to so find. R. at 34.

with the action taken in similar cases. That is, if a student is removed from school before the end of the semester, credit for that semester is not granted." R. at 119. However, the trial court determined that the policy was flawed because it did not distinguish between those students who earned passing grades in spite of missed assignments and those who did not. R. at 124. In essence, the trial court determined that precisely because every student is treated the same, the School Board's policy is arbitrary and capricious.

■ A school board is an administrative body. *See* I.C. § 20–4–1–3(5). And as with any administrative body, judicial review of its decisions is narrow. An agency decision will not be overturned unless it is purely arbitrary or an error of law has been made. *Ind. State Bd. of Pub. Welfare v. Tioga Pines Living Ctr., Inc.*, 622 N.E.2d 935, 939 (Ind.1993); *see also* I.C. § 4–21.5–5–14(d).

■ We understand the sentiment implicit in the trial court's order and expressed by some commentators concerning the harshness of so-called zero-tolerance policies.[4] However, it is not the role of the courts "to set aside decisions of school administrators which the court may view as lacking a basis in wisdom or compassion.... The system of public education that has evolved in this Nation relies necessarily upon the discretion and judgment of school administrators and school board members...." *Wood v. Strickland*, 420 U.S. 308, 326, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975). The question in this case is wheth-er the decision of the School Board was arbitrary and capricious.

■ We have said "[a]n action of an administrative agency is arbitrary and capricious only where there is no reasonable basis for the action." *Ind. Civil Rights Comm'n v. Delaware County Cir. Ct.*, 668 N.E.2d 1219, 1221 (Ind.1996); *compare City of Indianapolis v. Woods*, 703 N.E.2d 1087, 1091 (Ind.Ct.App.1998) ("An arbitrary and capricious decision is one which is patently unreasonable. It is made without consideration of the facts and in total disregard of the circumstances and lacks any basis which might lead a reasonable person to the same conclusion."). The burden of proving that the administrative action of the school was arbitrary or capricious falls on the party attempting to upset the administrative decision. *Forrest v. Sch. City of Hobart*, 498 N.E.2d 14, 17 (Ind.Ct.App.1986).

Indiana Code section 20–8.1–5.1–3 provides:

(a) Student supervision and the desirable behavior of students in carrying out school purposes is the responsibility of a school corporation and the students of a school corporation.

(b) In all matters relating to the discipline and conduct of students, school corporation personnel stand in the relation of parents and guardians to the students of the school corporation. Therefore, school corporation personnel have the right, subject to this chapter, to take *any disciplinary action necessary* to promote student conduct that con-

---

4. Although it is difficult to find a written definition of the term "zero-tolerance," since its inception in federal drug policy of the 1980's, it "has been intended primarily as a method of sending a message that certain behaviors will not be tolerated, by punishing all offenses severely, no matter how minor."

Russell J. Skiba, Ind. Educ. Policy Ctr., Zero Tolerance, Zero Evidence: An Analysis of School Disciplinary Practice 2 (Aug.2000) (observing there is little evidence that the strategies typically associated with zero tolerance contribute to improved student behavior or overall school safety).

forms with an orderly and effective educational system.

(c) Students must follow responsible directions of school personnel in all educational settings and refrain from disruptive behavior that interferes with the educational environment.

I.C. § 20–8.1–5.1–3 (emphasis added). In turn, Indiana Code section 20–8.1–1–10(a)(2) defines expulsion in relevant part as "a disciplinary or other action whereby a student . . . is separated from school attendance for the balance of the current semester or current year unless a student is permitted to complete required examinations in order to receive credit for courses taken in the current semester or current year[.]" In this case, Sollman was not allowed to complete required examinations "in order to receive credit" for the courses he had taken during the semester. He was thus expelled as a disciplinary sanction within the meaning of the statute. And although we do not agree with the view that the statute mandates a loss of credit upon expulsion,[5] we do acknowledge that the School Board has the discretion to impose such a sanction.

■ In order to promote student conduct which conforms with an orderly and effective educational system, a school board could understandably reach the conclusion that the deterrent of expulsion, uncoupled from a loss of credit, may not be a deterrent sufficient enough for a student to avoid being expelled. If a student knows for example that the ultimate consequence of violating school policy is expulsion only, then the student may assume the risk of getting expelled where he has already accumulated sufficient grades to pass the semester. In that instance, the disciplinary sanction for misbehavior is ap-preciably lessened, leaving only a penalty students might consider an incentive to misbehave. We also note that a consistently applied policy weighs against the notion that it is arbitrary. *Compare Ind. High Sch. Athletic Ass'n, Inc. v. Carlberg,* 694 N.E.2d 222, 233 (Ind.1997) (finding no arbitrariness or capriciousness in part because of consistent application of the athletic association's interpretation of transfer rule) *with Crane v. Ind. High Sch. Athletic Ass'n,* 975 F.2d 1315, 1325 (7th Cir.1992) (finding arbitrariness and capriciousness under same rule partly because guidelines were inconsistently applied). In this case, the record shows that all students are treated the same under the school's policy regardless of when the misconduct occurred or the status of the students' academic standing.

■ Deterring disciplinary problems in its school system is the basis upon which the School Board has adopted its expulsion/no credit zero-tolerance policy regarding drugs. Whether the School Board should re-examine its policy is not a matter for the courts to decide. As the Court of Appeals has observed, "School officials, with their expertise in such matters, are in the best position to determine in their discretion what actions are reasonably necessary to carry out school purposes. . . ." *Bd. of Sch. Trustees v. Barnell,* 678 N.E.2d 799, 805 (Ind.Ct.App.1997). We agree. As applied here, we cannot say there was "no reasonable basis" for the School Board's action. *Ind. Civil Rights Comm'n,* 668 N.E.2d at 1221. Accordingly, Sollman failed to carry his burden of demonstrating that the School Board acted arbitrarily and capriciously in depriving him of his fall semester credits. On this

---

5. *See* Brief of the Amicus Curiae to the Court of Appeals, Indiana School Boards Association at 3 (arguing "[t]he South Gibson School Board by statute *had to deny* Trent Sollman his first semester credits.") (emphasis added).

issue, the judgment of the trial court is reversed.

### *Conclusion*

We reverse that portion of the trial court's judgment ordering the School Board to award Sollman zeros for the fall semester course work that he missed after the expulsion and to give Sollman credit for those courses in which he had a passing grade after the zeros are taken into account. In all other respects, the judgment of the trial court is affirmed.

SHEPARD, C.J., and DICKSON, SULLIVAN and BOEHM, JJ., concur.