## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 10 2018, 9:42 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Dale W. Arnett
Winchester, Indiana

ATTORNEYS FOR APPELLEE

Sara R. Blevins
Michelle Cooper
Lewis & Kappes, P.C.
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| S.B. as Next Friend of A.D., <br> *Appellant-Petitioner,* <br><br> v. <br><br> Randolph Eastern School Corporation, <br> *Appellee-Respondent.* | December 10, 2018 <br><br> Court of Appeals Case No. 18A-MI-1575 <br><br> Appeal from the Randolph Superior Court <br><br> The Honorable Peter D. Haviza, Judge <br><br> Trial Court Cause No. 68D01-1505-MI-446 |

**Bailey, Judge.**

# Case Summary

[1] A.D. ("Student")—by Next Friend S.B., his mother ("Mother")—appeals the grant of summary judgment in favor of Randolph Eastern School Corporation ("School"), thereby upholding a 2015 decision to expel Student for several months. Student challenges the grant of summary judgment, alleging that School failed to comply with a handbook provision concerning representation by counsel when his counsel was not permitted to personally participate in his expulsion hearing. Having identified no violation of the handbook provision, we discern no error. We therefore affirm the decision of the trial court.[1]

# Facts and Procedural History

[2] The undisputed facts are that, in March 2015, Student was accused of using a high school computer to sell marijuana. Student and Mother met with the principal, and Student was suspended pending expulsion. Mother requested a formal expulsion hearing. As to this hearing, the student handbook specified: "A requested formal hearing is scheduled with the hearing examiner during which the student may be represented by his/her parents and/or legal counsel." Appellant's App. Vol. II at 132. Counsel for Student arrived for the expulsion

---

[1] To the extent School argues the matter is moot, we note that the expulsion remains on Student's record—something Student might have to disclose if he pursues a college education. Moreover, there remains the possibility—however small—that a new hearing could result in Student receiving credit for certain classes. *See*, *e.g.*, *S. Gibson Sch. Bd. v. Sollman*, 768 N.E.2d 437, 442 (Ind. 2002) (observing that a school has discretion to award credit based upon the student's coursework preceding a mid-semester expulsion).

hearing, but was told that he could not attend. Mother and Student ultimately attended the hearing while counsel stayed in an office down the hall.

[3] The hearing examiner decided to temporarily expel student until August 1, 2015. Mother then appealed the decision to the school board. The board held a hearing—that counsel was not permitted to attend—and, on May 4, 2015, issued notice of its decision to uphold the expulsion. Student then sought judicial review on May 14, 2015. Both School and Student filed motions for summary judgment, and the trial court held a hearing on the motions on May 20, 2016. The hearing focused on whether Student was deprived of due process because counsel was not permitted to attend either hearing. At the hearing on summary judgment, Student stated that he "did not attack the evidentiary part," but that "[i]t was the procedure of what they did. It was the procedure that they used according to their own rules." Tr. Vol. II at 15. The trial court took the matter under advisement and, in June 2018, entered an order (1) denying Student's motion for summary judgment and (2) granting School's motion.[2]

[4] Student now appeals.

# Discussion and Decision

[5] We review *de novo* whether the trial court properly granted summary judgment. *See Hewitt v. Westfield Washington Sch. Corp.*, 46 N.E.3d 425, 429 (Ind. 2015).

---

[2] The record does not disclose an explanation for the two-year delay between the hearing and the ruling.

Summary judgment is appropriate only "if the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Ind. Trial Rule 56(C). In conducting our review, we look only to the designated evidence. T.R. 56(H). Moreover, upon cross-motions for summary judgment, we separately consider each motion to determine whether a movant is entitled to judgment as a matter of law. *In re Ind. State Fair Litig.*, 49 N.E.3d 545, 548 (Ind. 2016).

[6] Here, summary judgment turns on the propriety of the expulsion decision, which the school board upheld. According to Indiana Code Section 20-33-8-21, judicial review of an expulsion decision "is limited to the issue of whether the governing body acted without following the procedure required under" Indiana Code Chapter 20-33-8. Student makes no argument that School failed to afford him the procedure required under that chapter, taking the position that "[t]he minimum [statutory] requirements do not require the right to an attorney." Appellant's Br. at 8. Nevertheless, despite the purported statutory limitation on judicial review, the Indiana Constitution empowers courts to review "whether a disciplinary action comports with the minimum requirements of due process." *Bd. of Sch. Tr. of Muncie Cmty. Schs. v. Duncan ex rel. Barnell*, 678 N.E.2d 799, 803 (Ind. Ct. App. 1997) (applying Article 1, Section 12 of our constitution).

[7] At bottom, all of Student's arguments hinge on the purported failure to comply with this handbook provision: "A requested formal hearing is scheduled with the hearing examiner during which the student may be represented by his/her parents and/or legal counsel." Appellant's App. Vol. II at 132. Student asserts

that he was entitled to have counsel personally participate in his hearing. Thus, as a threshold matter, we examine whether the provision afforded such a right.

[8] Notably, Indiana Code Section 20-33-8-12 provides that "the governing body of a school corporation must," among other things, "[e]stablish written discipline rules" and "make[] a good faith effort to disseminate to students or parents generally the text or substance of a discipline rule." I.C. § 20-33-8-12. Thus, the instant handbook procedure is akin to an administrative regulation.[3] "When the meaning of an administrative regulation is in question, the interpretation [by] the administrative agency is given great weight unless the agency's interpretation would be inconsistent with the regulation itself." *State Bd. of Tax Comm'rs v. Two Mkt. Square Assocs. Ltd. P'ship*, 679 N.E.2d 882, 886 (Ind. 1997). Furthermore, "the foremost goal of regulatory construction—like with statutory interpretation—is to give the words and phrases in the regulations their plain and ordinary meaning, within the context of the regulatory scheme in a way that reflects the intent of the agency that promulgated the regulations." *Nat. Res. Def. Council v. Poet Biorefining-N. Manchester, LLC*, 15 N.E.3d 555, 564 (Ind. 2014).

---

[3] We note that a school corporation is a municipal corporation. I.C. § 36-1-2-10. Our legislature excluded municipal corporations from the purview of the Administrative Rules and Procedures Act. *See* I.C. § 4-22-2-3 (excluding "a political subdivision as defined in IC 36-1-2-13" when defining "agency"); I.C. 36-1-2-13 (providing that "'[p]olitical subdivision' means municipal corporation or special taxing district"). Our legislature also excluded municipal corporations from the purview of the Administrative Orders and Procedures Act. *See* I.C. § 4-21.5-1-3 (excluding "a political subdivision" when defining "agency"); I.C. 4-21.5.-1-12 (giving "political subdivision" the meaning "set forth in IC 36-1-2-13"). Nevertheless, in matters of school discipline, schools are functioning like administrative bodies. *See Sollman*, 768 N.E.2d at 441.

Here, School directs us to designated evidence that School has consistently interpreted the provision to mean that a student "has the opportunity to talk to the legal counsel, just the legal counsel is not . . . in the hearing." App. Vol. II at 112. According to School, its procedure accorded with the handbook because "counsel was on-site and A.D. was permitted to step out of the meeting to confer with counsel had [he] chosen to do so." Br. of Appellee at 16.

We observe that Indiana schools should comply with their own handbooks, just as schools expect students to follow the rules. Here, the handbook provision makes an unartfully bare reference to counsel that opens itself to interpretation. Nonetheless, within the context of student discipline, we cannot say that School's interpretation is inconsistent with the handbook provision itself. Rather, the provision specified that Student "may be represented" by counsel during the expulsion hearing, and Student could have consulted with counsel during the hearing. This interpretation is not tantamount to a lack of representation. Further, in other contexts, this Court has recognized the advantages of less-adversarial disciplinary proceedings, observing that "[t]o further escalate the formality . . . of the suspension process 'may not only make it too costly as a regular disciplinary tool but also destroy its effectiveness as [] part of the teaching process.'" *Reilly v. Daly*, 666 N.E.2d 439, 444 (Ind. Ct. App. 1996) (quoting *Goss v. Lopez*, 419 U.S. 565, 583 (1975)), *trans. denied*; *see also Lake Cent. Sch. Corp. v. Scartozzi*, 759 N.E.2d 1185, 1190 (Ind. Ct. App. 2001) (recognizing that when an expulsion hearing occurs without counsel, "the student, administrators and other participants . . . can concentrate on the

student and the issues at hand without the focus being shifted to the attorneys and their legal maneuvering").

[11] As we conclude that the handbook provision did not guarantee the presence of counsel at the hearing itself, Student has not directed us to error. Thus, the trial court properly granted summary judgment in favor of School. Nevertheless, we remind schools of the importance of complying with their adopted procedures.

[12] Affirmed.

Mathias, J., and Bradford, J., concur.